UNITED STATES of America, Plaintiff-Appellee,

v.

Roy L. LEHMANN, Defendant-Appellant.

No. 79–5056.

United States Court of Appeals, Fifth Circuit.

March 10, 1980.

Robert W. Knight, Fed. Public Defender, Mark A. Pizzo, Asst. Fed. Public Defender, Tampa, Fla., for defendant-appellant.

Manuel Menendez, Jr., Tampa, Fla., for plaintiff-appellee.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

TJOFLAT, Circuit Judge:

Roy L. Lehmann appeals his conviction for interstate transportation of a firearm by a felon. 18 U.S.C. § 922(g) (1976).[1] Four issues are presented: (1) the sufficien-

---

1. Section 922(g) provides in part:

It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

· · · · ·

to ship or transport any firearm or ammunition in interstate or foreign commerce.

cy of the evidence; (2) the adequacy of the jury instructions on the elements of the offense; (3) the correctness of interpreting the section 922(g) language "convicted in any court" to include a Texas felony conviction that resulted in a suspended sentence; and (4) the propriety of certain comments in the prosecutor's closing argument. We find no error and affirm.

The testimony in the Government's case-in-chief disclosed the following: On September 16, 1978, Lehmann was aboard a fifty foot fishing vessel in Florida territorial waters off Fort Myers Beach. The Coast Guard stopped and boarded the vessel to conduct a documentation check. Lehmann identified himself as the captain. A Coast Guard officer asked Lehmann if he had any firearms on board. Lehmann acknowledged that he did and produced a .38 caliber revolver. A radio check from the Coast Guard cutter disclosed that Lehmann had been convicted of a felony, and he was taken into custody. Two days later, customs agents questioned Lehmann. He admitted having a prior felony conviction and purchasing the revolver in New Orleans a few weeks earlier. Lehmann was not asked, and he did not volunteer, how the weapon had been transported from New Orleans to the place of his arrest off Ft. Myers.

In his defense, Lehmann admitted that he was a convicted felon and that he had purchased the .38 caliber revolver in New Orleans. Lehmann explained, however, that he had purchased the gun for a Mr. Gomez, a Honduran bank official, and had given it to Gomez in New Orleans. Lehmann went on to relate that he and Gomez subsequently flew to Pensacola, Florida; the gun was carried in Gomez's luggage. In Pensacola they rented a car and drove on to Port St. Joe, Florida, where Gomez• purchased the fishing vessel on which Lehmann was later arrested. It was agreed that Lehmann would sail the boat to Honduras; · Gomez would make the trip by other means. Lehmann insisted that it was not until the vessel was at sea that he discovered the handgun aboard.

## I

Lehmann argues that the evidence is insufficient to sustain his conviction because the Government failed to prove an essential element of the crime, i. e., that he shipped or transported the firearm in interstate commerce. He acknowledges that the prosecution introduced evidence—in the form of his admissions—from which such transportation could be inferred, but that evidence, he submits, was not corroborated by independent proof that he participated in the transportation and, therefore, lacked probativeness. See Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

To establish a violation of section 922(g) in this case, the Government was required to establish two elements: (1) that the defendant has been convicted of a felony and (2) that the defendant shipped or transported a firearm in interstate commerce. See note 1, supra. The first element was proved by a stipulation that Lehmann had suffered a Texas conviction for felony theft. The second element was established by a combination of Lehmann's several admissions and independent evidence. We do not discern the corroboration problem that Lehmann claims to exist.

Lehmann commences his argument by observing that his purchase of the pistol in New Orleans was established by his statements alone. While his out-of-state purchase of the gun is not a formal "element" of the crime, it may well be a fact subsidiary to the proof of an "element," since "[i]t is the practical relation of the statement to the Government's case which is crucial, not its theoretical relation to the definition of the offense." Id. at 155, 75 S.Ct. at 198–99. Here, the only evidence that placed Lehmann outside the state of Florida with the gun were his admissions. Since his possession of the gun in New Orleans obviously was critical to the inference of interstate transportation, we must examine whether his admission can be used to establish that possession.

Lehmann's acquisition of the revolver in New Orleans was disclosed initial-

ly when he was questioned by the customs agents, and he repeated this in his testimony at trial. The policy rationale for requiring corroboration is to prevent errors in convictions based on untrue confessions. *Id.* at 153, 75 S.Ct. at 197. Here the concern for reliability has been satisfied. Lehmann's extra-judicial admission was voluntarily made to the customs agents after he received a *Miranda* caution and waived the right to the presence of counsel. Lehmann raises no question as to the propriety or the truth of his statement to customs. The admission at trial was elicited by his own attorney and was, of course, free of any taint of coercion. Record, vol. 2, at 161. The admission in open court was sufficient in itself to establish Lehmann's acquisition of the revolver in New Orleans. *United States v. Dixon*, 538 F.2d 812, 813 (9th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976). Moreover, the coincidence that the admission to customs was repeated at trial, considered with the Coast Guard's independent observation of Lehmann's actual possession of the weapon aboard ship, corroborated that admission. *See United States v. Micieli*, 594 F.2d 102 (5th Cir. 1979); *United States v. Gresham*, 585 F.2d 103 (5th Cir. 1978).

What Lehmann is really contending, but fails to articulate, is not that the Government's case must fail for want of corroboration, but that its case is devoid of proof that he transported the handgun from Louisiana to Florida. The Government concedes that there is no direct evidence of Lehmann's interstate transportation; it argues instead, that the requisite transportation was shown circumstantially. The government cites *United States v. Little*, 562 F.2d 578 (8th Cir. 1977), involving a section 922(g) prosecution, to illustrate its point. In *Little*, the circumstantial evidence of interstate transportation was: the defendant saw a gun collection at a Missouri residence; subsequently the collection was stolen; sometime later the defendant was seen transferring a number of guns from a friend's car to his car; and the defendant eventually sold two of the stolen guns in Arkansas. Despite the absence of direct evidence

showing that the defendant transported the two stolen guns in interstate commerce, the Eighth Circuit held that the evidence was sufficient to permit a jury inference that the requisite interstate transportation had taken place. *Id.* at 580.

In determining whether, in this case, the jury could have inferred that the defendant transported the revolver in question from Louisiana to Florida, we must view the evidence, direct and circumstantial, in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In doing so, we find the circumstantial facts to be quite similar to those in *Little*. If anything, the facts in *Little* are less compelling. There, the proof that the defendant acquired the guns in Missouri was purely circumstantial; here, there is direct proof—Lehmann's corroborated admissions. The *Little* court was satisfied that the circumstantial evidence of the defendant's acquisition in Missouri, added to the direct evidence of his possession of the guns in Arkansas, permitted the conclusion that he had transported them interstate. We are satisfied that the same conclusion can be drawn, here, from the direct evidence that Lehmann possessed the gun in Louisiana, accompanied it to Florida, and had it in his possession there. Lehmann's testimony that Gomez, alone, had possession of the revolver during the trip was open to acceptance or rejection, in whole or in part, by the jury, especially when Lehmann's exculpatory explanation was not forthcoming until he took the stand at trial. Giving the Government the benefit of every reasonable inference from the evidence, we think there are but two logical conclusions: Lehmann transported the gun, or caused it to be transported, from Louisiana to Florida.

## II

Lehmann next contends that the trial court improperly instructed the jury on the conduct proscribed by section 922(g). The trial court instructed the jury:

Two essential elements must be proved in order to establish the offense charged in the Indictment, as follows:

First, that the Defendant was convicted of an offense punishable by imprisonment for more than one year under the laws of the State;

Second, that the Defendant thereafter knowingly shipped, transported, or caused to be shipped or transported, a firearm in interstate commerce.

Record, vol. 3, at 42. The defense objected to the inclusion of the language "or caused to be shipped or transported" in the court's submission of the interstate transportation issue, claiming that such an instruction impermissibly broadened the prohibition of the statute. The trial judge overruled this objection on the theory that Lehmann could be found guilty under section 922(g) even though he had relinquished possession of the revolver in Louisiana, if he knew that the gun would be transported to Florida. Accordingly, the disputed language was left in the instruction. *Id.* at 4–10. We find no error in this portion of the jury charge. The language complained of was merely part of the definition of "ship," which includes the act of causing to be shipped or transported. *See* Webster's Third New International Dictionary 2096 (1961).

For appeal purposes, Lehmann has couched his objection to the instruction somewhat differently. He now concedes that the trial court was correct in including the language "caused to be shipped or transported" in the charge, but suggests that the court did not go far enough in instructing the jury. The word "willfully" should have prefaced the language, the suggestion continues, in order to satisfy the requirement of specific criminal intent contained in 18 U.S.C. § 2(b).[2]

The notion that this case was prosecuted under section 2(b) was not articulated, by counsel or the court, at any time during the prosecution of this case below. Lehmann

insists, however, that section 2(b) was plainly implicated by the trial court's instruction that he could be found guilty if he "caused" the revolver to be shipped from Louisiana to Florida; therefore, the court's failure to admonish the jury that the Government had to show that he acted with the specific intent mandated by section 2(b) was fatal, and constitutes plain error.

■ It is purely coincidental that, in this case, both sections 922(g) and 2(b) would embrace the "caused to be shipped or transported" instruction. Since the indictment did not charge Lehmann with a violation of section 2(b), but only section 922(g), neither the parties nor the court had any reason to contemplate a section 2(b) instruction. For Lehmann now to complain that the trial court failed to instruct the jury on an offense for which he was neither charged nor tried seems, to us, sophistic at best. Since Lehmann contends that the court's instructions were inadequate, however, we deem it appropriate to consider whether specific intent, *i. e.*, willfulness, is an element of a section 922(g) offense.

■ The statute itself does not contain the word "willfully," and courts that have considered the special intent issue with regard to other subsections of the same statute have held that willfulness, or even knowledge, is not an element of the crime. *See United States v. Haddad*, 558 F.2d 968 (9th Cir. 1977) (knowledge is not an element of crime of receipt by a convicted felon of a firearm that has been shipped or transported in interstate commerce, 18 U.S.C. § 922(h) (1976)); *United States v. Petrucci*, 486 F.2d 329 (9th Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974) (willfulness is not an element of various sections of the Gun Control Act of 1968, 18 U.S.C. §§ 921–928 (1976)); *United States v. Jones*, 481 F.2d 653 (2d Cir. 1973) (scienter is not element of crime of interstate transportation of weapons by an unlicensed person, 18 U.S.C. § 922(a)(3) (1976)); *United*

---

2. Section 2(b) provides:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

*States v. Ruisi,* 460 F.2d 153 (2d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 234; 34 L.Ed.2d 176 (1972) (knowledge is not an element of crime of unlicensed dealing in firearms, 18 U.S.C. § 922(a)(1) (1976)). We see no sound policy reason for this court to read into section 922(g) a willfulness requirement that Congress itself did not mandate.

## III

■ Lehmann claims that the trial court erred in denying his pretrial motion to dismiss the indictment for want of a prior felony conviction. The conviction that gave rise to the indictment allegedly occurred in 1976, when Lehmann was found guilty of felony theft in Jefferson County, Texas, and was given an eight year sentence. The execution of the sentence was suspended, however, and Lehmann was placed on probation for eight years. Under Texas law, when a Texas court suspends a sentence and grants probation, the conviction is not considered final. *Davis v. Estelle,* 529 F.2d 437, 440 (5th Cir. 1976). Because he was on probation when the indictment in this case came down, Lehmann argues, he had no Texas conviction and, therefore, was not subject to prosecution under section 922(g).

. Although Lehmann gains some support from our opinion in *United States v. Matassini,* 565 F.2d 1297, 1310 n. 26 (5th Cir. 1978), where we noted that Congress likely intended state law to govern the definition of conviction, his argument has been foreclosed by our more recent decision in *United States v. Padia,* 584 F.2d 85 (5th Cir. 1978). *Padia* addressed this same issue in a case brought under another subsection of the same statute, 18 U.S.C. § 922(h) (1976), and held that a prior conviction did exist where a defendant, convicted of a crime in Texas, was given probation. We stated: " '[t]he manner in which a Texas court chooses to deal with a party subsequent to his conviction is simply not of controlling importance' where, as here, 'a function of federal, not state law . . . is concerned.' " *Id.* at 86 (quoting *Gonzalez de Lara v. United States,* 439 F.2d 1316, 1318 (5th Cir. 1971)). The trial court, therefore, was correct in following *Padia* and denying the motion to dismiss.

## IV

■ Lehmann's final argument questions the propriety of the prosecutor's remarks at closing argument. The prosecutor referred to Gomez as "a mystery man," noted how "convenient" it was for Gomez to carry the gun across state lines, and questioned why he had not appeared to corroborate Lehmann's version of the facts. The defense objected to the implication that Gomez's failure to appear somehow served Lehmann's interests. Although Lehmann recognizes that the failure to produce a favorable witness, when it is within a party's power to do so, creates an inference that the witness's testimony will be unfavorable, *see United States v. Parr,* 516 F.2d 458 (5th Cir. 1975), he contends that, here, Gomez was in Honduras, beyond the subpoena power of the court, and was therefore unavailable under Fed.R.Evid. 804(a), which defines unavailability as a witness.[3] This, he argues, made the prosecutor's closing argument improper and prejudicial, suggesting an inference that was impermissible because Lehmann did not have the power to produce Gomez as a witness.

In assessing Lehmann's argument, we must remember that it was Lehmann himself, while testifying in his own behalf, who first mentioned the identity of the missing witness as part of his alibi. It was only at trial that the Government learned the identity and whereabouts of the crucial defense witness. In *McClanahan v. United States,* 230 F.2d 919 (5th Cir.), *cert. denied,* 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956), we discussed the propriety of a prosecutor's comment on the failure of a party to call a witness under similar circumstances:

**3.** Lehmann cites no cases, and we find none, showing the applicability of rule 804(a) to the scope of prosecutorial comment on closing argument. Rule 804(a), instead, is directed to exceptions to the hearsay rule when the declarant is unavailable.

*The failure of a party to produce as a witness one peculiarly within the power of such party creates an inference that such testimony would be unfavorable, and may be the subject of comment to the jury by the other party.* It is said that no inference arises, and hence no comment is permissible, "where the person in question is equally available to both parties; particularly where he is actually in court; though there seems to be no disposition to accept such a limitation absolutely or to enforce it strictly". Here the person not called was or had been the appellant's attorney and it might be expected that his testimony, if given, would corroborate that of the appellant as to the legal advice given. In such situation it cannot be said that the attorney was as available to the prosecution as to the defense. The rule is thus stated:

"   .   .   the question of equal availability of a witness not called is largely a question of fact, and various courts have regarded all manner of circumstances as bearing upon the matter."

*It has been well said that "the availability of a witness is not to be determined from his mere physical presence at the trial or his accessibility for the service of a subpoena upon him. On the contrary, his availability may well depend, among other things, upon his relationship to one or the other of the parties,* and the nature of the testimony that he might be expected to give in the light of his previous statements or declarations about the facts of the case."

*Id.* at 925–26 (citations omitted and emphasis added). *See United States v. Gipson,* 593 F.2d 7 (5th Cir. 1979); *United States v. Chapman,* 435 F.2d 1245 (5th Cir.), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). In this case, we would be hard pressed to say that Gomez was as available to the Government as to Lehmann. Lehmann made no effort to arrange Gomez's presence at trial to corroborate the theory of the defense. We find no prosecutorial error here.

Accordingly, the conviction is

AFFIRMED.