UNITED STATES, Appellee,

v.

Eric J. QUESADA–BONILLA,
Defendant, Appellant.

No. 90–2201.

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1991.

Decided Dec. 27, 1991.

Thomas R. Lincoln, by appointment of the Court, with whom Law Offices of Thomas R. Lincoln, was on brief, Old San Juan, P.R., for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., Chief, Crim.Div., with whom Daniel F. Lopez–Romo, U.S. Atty., was on brief, Hato Rey, P.R., for appellee.

Before BREYER, Chief Judge, TORRUELLA, Circuit Judge, and WOODLOCK,* District Judge.

BREYER, Chief Judge.

The appellant, Eric Quesada–Bonilla, appeals his conviction for robbing a post office in San Juan, Puerto Rico. 18 U.S.C. §§ 2, 2114. The government's key witness, postal clerk Bernardo Arce, testified that on May 3, 1990, at about 3 p.m., a man entered the post office, jumped up on the counter, pointed a gun at him, demanded all the money in the cash register, and left with a bag containing about $2700. Arce positively identified the appellant as that man, as did one other witness, Erin Benitez, who caught a glimpse of the fleeing robber as she was entering the post office.

Quesada's defense was that he was working at a nearby factory at the time of the robbery. He produced a "check out form" from the factory with his name opposite the hour "3:30 p.m." Since the robbery took place at about 3 p.m., the jury, when convicting him, must have believed that Quesada signed in that space at a different time, or that someone else (perhaps his brother, who also worked at the factory) signed for him or, just conceivably, that he left the factory, robbed the post office, returned to the factory (several minutes drive away) and signed the form by 3:30 p.m. Quesada also produced a very brief "production report" which he claimed he wrote "at the end of the day" (presumably before signing out at 3:30 p.m.). The jury must have found this evidence equally unconvincing, for similar reasons.

Quesada appeals his conviction, complaining primarily of actions by the district judge and by the prosecutor that, he says, prejudiced the jury against him. Since the question before the jury was essentially one of which witnesses to believe, he argues, even subtle forms of prejudice might

* Of the District of Massachusetts, sitting by designation.

have proved fatal to his defense. We recognize that an unbiased jury is essential in any criminal proceeding, but we do not believe that the rulings and statements to which Quesada points created unlawful prejudice here. We therefore affirm his conviction. We shall briefly state our reasons.

### I

### *Jury Selection*

Quesada argues that the district court's jury selection process improperly prejudiced the jury. He points out that his panel included two members who had just finished serving in another criminal case, before the same judge, who had selected both juries from the same pool. In the first case, the jury had convicted a defendant whom Quesada's lawyer also represented. Moreover, after the first conviction, the judge told the first jury that it seemed to him

> that with the kind of evidence we had, ... the only solution or alternative was the one you found. Had the case been tried to me without a jury, I don't think I could have reached any other conclusion.

Quesada adds that the first case (a drug smuggling case) raised the question of whether the defendant had written a name on some baggage tags (rather like the issue of whether Quesada signed out on the check out form or wrote the production report). His lawyer had produced a handwriting expert in that case. The two "overlapping" members who served on his own jury, Quesada argues, may have wondered why his lawyer did not offer a handwriting expert at his trial as well. All this, he says, adds up to unlawful prejudice.

 After examining the record, however, we can find no such prejudice. We are aware of no authority that prohibits a court, as a general matter, from empaneling juries for several cases in a single proceeding or using the same jurors in several cases, whether or not the defendants in those separate cases use the same lawyers. Such practices are fairly common in several judicial districts. *See, e.g., Unit-*

*ed States v. Franklin,* 700 F.2d 1241, 1242 (10th Cir.1983); *see also United States v. Gillis,* 942 F.2d 707 (10th Cir.1991). We approved the practice in *United States v. Maraj,* 947 F.2d 520, 523–25 (1st Cir.1991). And, we see no reason to challenge, or to depart from that circuit authority. *See also United States v. Graham,* 739 F.2d 351, 352 (8th Cir.1984) (absent showing of "actual prejudice on the part of the challenged jurors, we have repeatedly rejected the argument that a juror's service in prior cases involving the same attorneys or witnesses supports a per se theory of implied bias"); *United States v. Riebschlaeger,* 528 F.2d 1031, 1032–33 (5th Cir.) (per curiam), *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976) (jurors' service in other cases with same defense counsel and same prosecutor and resulting in convictions did not require the court to "quash" entire jury panel; "concept of implied bias" rejected).

Nor do we believe that the judge's postverdict remarks to the first jury created any actual prejudice to Quesada. We recognize that American Bar Association standards say that trial judges are not to comment to the jury on the merits of its verdict. *See* ABA Standards for Criminal Justice 15–4.6 (2d ed. 1980) ("While it is appropriate for the trial judge to thank jurors at the conclusion of a trial for their public service, such comments should not include praise or criticism of their verdict."); ABA Standards, *The Function of the Trial Judge* § 5.13 (Approved Draft 1972) (same); ABA Standards, *Trial by Jury* § 5.6 (Approved Draft 1968) (same). This Standard was "intended to avoid improper influence in other cases to which the jurors may be assigned," *id.* commentary, particularly where "these same jurors may immediately be assigned to decide other pending cases." ABA Standards for Criminal Justice 15–4.6 commentary. Specifically, it sought to eliminate "the practice of some judges ... to ... comment favorably or unfavorably upon the verdict, for example, that [the jurors] did the right thing in convicting the defendant...." *Id.* The 1990 ABA Model Code of Judicial Conduct reaffirms this basic principle. *See* ABA Canon 3 B(10) and commentary (a "judge shall not commend

or criticize jurors for their verdict other than in a court order or opinion," lest doing so "imply a judicial expectation in future cases," and thereby "impair a juror's ability to be fair and impartial in a subsequent case.").

■ ABA standards and model rules, however, do not automatically set the measure of reversible error in specific cases, particularly where, as here, the case does not present the ·evils the proposed canon seeks to prevent. Here, the judge's comments did not "imply" any "judicial expectation." The judge told the jury he thought it had reached the correct result in that specific case (in the judge's words) *"with the kind of evidence we had."* This language does not suggest the judge favored convictions or believed that a jury should convict in a different case where the evidence was different. We do not see how the comment could have biased the two members of Quesada's jury who had served in the preceding trial. And, in the absence of prejudice, any legal error is "harmless." Fed.R.Crim.P. 52(a).

Neither did the presence of a "handwriting issue" in both cases create actual prejudice. The circumstances of the first case (involving drug smuggling) and Quesada's case were very different. Moreover, a juror, whether or not he had previously served on a "handwriting case" jury might well think about the possible use of experts to resolve handwriting disputes. That the two overlapping jurors had some special, bias-creating thought about this matter is simply too remote a possibility for us to find that the overlap created prejudice. *Cf. United States v. Morales–Diaz,* 925 F.2d 535, 537 (1st Cir.1991) (rejecting defendant's argument that jurors who had served in unrelated prior drug case were more likely to convict "because their prior guilty verdict indicated that they had already determined favorably the credibility of the government's witnesses" who testified at both trials).

## II

### Judge's Comments at Trial

Quesada complains about a comment the judge made during the trial. Defense counsel had questioned the postal clerk, Bernardo Arce, at length about a surveillance camera in the post office—a camera that failed to work during the robbery, perhaps because it had no film. At one point counsel turned to the judge and said, "I wish they had had film, your honor." The judge replied (with sarcasm, according to Quesada), "Well, I am not that sure." Quesada says this remark led the jurors to think the judge thought Quesada guilty, thereby prejudicing their deliberations.

■ The following considerations, taken together, convince us that this comment, while best left unsaid, was not reversible error. First, a trial court has broad authority to comment during a trial, and in particular, to comment in a way that will stop the jury from treating a lawyer's argument as if it were evidence. *Quercia v. United States,* 289 U.S. 466, 469–70, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933); *Doherty v. Doherty Ins. Agcy.,* 878 F.2d 546, 553 (1st Cir.1989); *United States v. Mateos–Sanchez,* 864 F.2d 232, 240–41 (1st Cir. 1988). The trial judge's comment here appears to have been a spontaneous and inartful effort to caution against just such an evidentiary use of defense counsel's gratuitous observation.

Second, Quesada's counsel, in a sense, provoked the court's comment. He spent considerable time questioning Arce about why the camera failed to work—a matter that was irrelevant to the issues before the court. After this extended questioning, the court said,

> I don't think we should go into this any further. The fact is that the camera had no film or not enough film. That is the end of the issue. That is all. We are not judging the U.S. Government for failing to keep film in the camera.

At that point, Quesada's counsel said, "I wish they had had film, your honor," a comment which, though legally irrelevant, might have improperly swayed the jury. *See United States v. Young,* 470 U.S. 1, 7–9, 105 S.Ct. 1038, 1041–43, 84 L.Ed.2d 1 (1985) (defense counsel and prosecution

subject to "essentially the same standards" barring "commenting on the defendant's guilt" or offering unsolicited personal views on the evidence); *Willey v. Ketterer,* 869 F.2d 648, 650 n. 1 (1st Cir.1989) (similar); ABA Model Code of Professional Responsibility DR 7–106(C) (1980) (barring counsel's assertion of personal knowledge of facts in issue or personal opinion as to guilt or innocence of accused); ABA Standards Relating to the Administration of Criminal Justice 4–7.8 (1979) (similar). Only then did the court respond, "Well, I am not that sure." Against this background, the court's comment served to blunt the impact of defense counsel's statement. *Cf. Young,* 470 U.S. at 12–13, 105 S.Ct. at 1044–45 ("invited response" by prosecutor to defense counsel's improper comments does not warrant reversal where prosecutor's comments merely "right[ed] the scale"). When, as happened here, a trial judge's provoked remark, though unfortunate, did not substantially taint the proceedings, the defendant was not denied a fair trial and reversal is not warranted. *United States v. Polito,* 856 F.2d 414, 418 (1st Cir.1988); *United States v. Mickens,* 926 F.2d 1323, 1327 (2d Cir.1991) (judge's "occasional intemperate remarks did not substantially taint defendant-appellants' trial," noting also that "remarks were provoked to some extent" by defense counsel's comments).

Third, the court gave closing instructions that made clear the jury's obligation to ignore its comment. The judge reminded the jurors that the defendant was "presumed innocent." He said they were "at liberty to disregard all comments that I have made...." He said that if they thought that he "held an opinion because of ... any intervention that I had, you should get that out of your mind." *See United States v. Paz Uribe,* 891 F.2d 396, 401 (1st Cir.1989), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990) (judge's instruction to jury that they were not to take his questions and comments as "an indication of his opinion about the defendant's guilt or innocence" was enough to cure any prejudice created by the judge's possibly misunderstood comment,

made on another issue, that "I have no doubt."); *Polito,* 856 F.2d at 418 (rejecting defendant's claim of unfair trial where judge instructed jury that judge's comments rebuking defense counsel were not to be taken as evidence or as statements of the court's opinion concerning the proper outcome of the case).

Finally, Quesada did not object to the court's comment at the time. Had he done so, the court might have explained its comment immediately in a way that rendered it completely innocuous. Having failed to object, Quesada can prevail only if the district court made a "plain error." *See Paz Uribe,* 891 F.2d at 401. For the reasons we have given, we can find no plain error in this record.

### III

#### *Prosecutor's Closing Argument*

■ Quesada complains of a portion of the prosecutor's closing argument, in which the prosecutor told the jury:

> The instructions call for you to give a defendant a fair trial. But the instructions also require that you do justice to Mr. Arce, who was the victim in this case. To Mrs. Erin Benitez, who was walking in the post office with a four year old while a man armed with a .45 was walking out with a bag full of money. That is what you must look at.

Quesada's counsel immediately objected to these remarks as irrelevant and potentially inflammatory (in defense counsel's words, because they were "tantamount to calling for sympathy for a victim of a crime and a witness of a crime"). *United States v. Capone,* 683 F.2d 582, 585 (1st Cir.1982); *United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983). The court sustained the objection, telling the jury, "Those are not the evidence." The court then reprimanded the prosecutor, at a bench conference (apparently within earshot of the jury); but, the court did not grant defense counsel's request, made at the bench conference, for an immediate "clarifying instruction on this matter of ... doing justice for

Mr. Arce and Mrs. Benitez," a failure to which Quesada now objects.

We have previously pointed out that a comment like the prosecutor's calls for a new trial, but only if it "was likely to have affected the trial's outcome, ... or that sanction is needed to deter future prosecutorial misconduct." *Capone,* 683 F.2d at 586. Such conduct is inappropriate from any counsel and especially disturbing from an Assistant United States Attorney who bears a special obligation to see "that justice shall be done" and a special "duty to refrain from improper methods calculated to produce a conviction...." *Id.* at 585 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). But, the prosecutor's improper comments in this case were not "likely to have affected the trial's outcome." First, the court sustained defense counsel's objection and immediately told the jury that the comment was not "evidence." Second, the record indicates that passion, or sympathy for Mr. Arce and Mrs. Benitez, is not likely to have played any significant role in the jury's deliberations. Third, the court gave the essence of a proper cautionary instruction when it told the jurors, at the end of the case, that they should decide without "bias or prejudice or passion or public opinion or sympathy;" that they should "try ... to leave ... aside" any "feelings"; that the law permits nothing but "legal evidence presented to the jury to be considered"; and that the "accused and the government expect that you ... will carefully and impartially consider the evidence ... regardless of the consequences." These instructions were "sufficient to counteract prejudice that flowed from the prosecutor's statement." *Capone,* 683 F.2d at 587; *cf. Mateos–Sanchez,* 864 F.2d at 241; *see also Maccini,* 721 F.2d at 847 ("Waiting until the next day" to give strong curative instruction addressed to prosecutor's improper comments "did not prejudice the defendant.").

Nor do we find a particular need to require a new trial in this case as a "sanction" to deter future misconduct. *Capone,* 683 F.2d at 587. The district court reprimanded the prosecutor for having made the comment. This reprimand, and the court's expressions of concern to the prosecutor were sufficient to prevent a recurrence of such prosecutorial misbehavior.

## IV

*Disclosure of Alibi Rebuttal Witness*

Quesada says that the government failed to disclose an "alibi rebuttal" witness on time, that is, within ten days after the defense told the government that it intended "to offer a defense of alibi." Fed. R.Crim.P. 12.1(a), (b). On August 1, 1990, the defense told the government it would rely on an alibi and that defendant's brother, David, would testify in support. On August 28, the government told the defense that it would introduce, in rebuttal, a polygraph operator who had tested David and found him to be lying. The defense then asked the court to prohibit the operator from testifying, simply and solely because the government had given the defense his name *twenty-seven* days after the defense notice of alibi, rather than within the *ten* days that Rule 12.1 specifies. The court denied this request, and the defense decided not to have David testify. Quesada now argues the court should have granted the request.

Quesada is right about the duty that Rule 12.1 imposes. The Rule says, in relevant part, that, after the defense tells the government that it will rely on an alibi and gives the government the names and addresses of its alibi witnesses, then

> [w]ithin ten days thereafter, ... the government shall serve upon the defendant ... a written notice stating the names and address of the witnesses upon whom the government intends to rely to ... rebut testimony of any of the defendant's alibi witnesses.

*Id.* 12.1(b).

■ Quesada is wrong, however, about what the court must do when the government violates the Rule. Under the heading "Failure to Comply" the Rule says,

> Upon the failure of either party to comply ..., the court *may* exclude the testi-

mony of any undisclosed witness offered by such party....

*Id.* 12.1(d) (emphasis added). The word "may" means that the court need not exclude the testimony. And, case law makes clear that trial courts have considerable leeway in deciding how to respond to a violation of the Rule. *See United States v. Devin,* 918 F.2d 280, 289 (1st Cir.1990); *United States v. Ingraldi,* 793 F.2d 408, 411 (1st Cir.1986); *United States v. Pace,* 833 F.2d 1307, 1314 (9th Cir.1987), *cert. denied,* 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1990).

 In this case, Quesada knew about the existence of the witness from the very beginning of the case. Moreover, a brief continuance would apparently have cured any harm caused by the relatively short delay, yet Quesada did not ask for a continuance. *See United States v. Osorio,* 929 F.2d 753, 758 (1st Cir.1991) ("Generally ... the failure to ask for a continuance [is] an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously"). Under these circumstances, we believe the district court, in deciding not to forbid the witness to testify (on grounds of late disclosure), acted well within its discretionary powers.

Quesada, in his appellate brief, adds another argument. He says that the government failed to disclose, in response to a discovery request, the record of the polygraph examination administered to David. For this additional reason, he says, the district court should have told the government that the operator could not testify. *See* Fed.R.Crim.P. 16(a)(1), (d)(2) (outlining evidence which government has duty to disclose, upon request from defendant, and court's discretionary authority to exclude improperly undisclosed evidence). As we read the record, however, Quesada did not make this argument in the district court, and therefore has waived the argument. *United States v. Carrasquillo–Plaza,* 873 F.2d 10, 13 (1st Cir.1989). Regardless, the government made the examination record available to Quesada on August 31. Yet, Quesada failed to ask for a continuance, a failure which, for the reasons just mentioned, would justify the district court's decision. *Cf. Devin,* 918 F.2d at 289 (standard where exculpatory material disclosed late is whether defense was "prevented by the delay from using the disclosed material effectively," quoting *Ingraldi,* 793 F.2d at 411–12, and, where material remains undisclosed, is whether timely disclosure "might have affected the outcome of the trial," quoting *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)).

For these reasons, the judgment of the district court is

*Affirmed.*