UNITED STATES of America, Appellee,

v.

Samuel G. RAMOS, Defendant, Appellant.

No. 91–1702.

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1991.

Decided April 21, 1992.

---

7. *See Hanson v. Parkside Surgery Center*, 872 F.2d 745, 749 (6th Cir.), *cert. denied*, 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989).

Richard M. Welsh, by Appointment of the Court, with whom Welsh & Mahoney, North Grafton, was on brief, for defendant, appellant.

Timothy Q. Feeley, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Samuel G. Ramos entered a conditional plea of guilty pursuant to an indictment charging him with five counts of possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Defendant's plea was conditioned on his being allowed to appeal from two adverse district court rulings as follows: (1) that the defendant's knowledge that he violated federal law was not a necessary element of the offense charged, and (2) that the fact his prior state misdemeanor convictions did not result in the collateral loss of any civil rights did not prevent them from being predicate crimes for purposes of § 922(g)(1). We affirm his conviction.

## FACTS

On November 1, 1990, a grand jury returned a five-count indictment charging that Samuel G. Ramos (Ramos), having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did, on five different occasions, knowingly possess firearms which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, both the government and Ramos filed motions for rulings of law directed to the issues referred to above. In a comprehensive memorandum, the district court ruled on these motions, finding against the defendant on both issues. The government then entered into a written agreement with Ramos for disposition of the case. It was agreed that Ramos would enter a conditional plea of guilty to all five counts of the indictment, reserving the right to have the court of appeals review the district court's rulings on the motions. The district court approved the agreement.

Ramos also agreed to a statement of undisputed facts for purposes of appellate review. This established, among other things, that on September 12, 1989, Ramos was convicted in Massachusetts of assault and battery under Mass.Gen.Laws Ann. ch. 265, § 13A (West 1990) and violation of a protective order under Mass.Gen.Laws Ann. ch. 209A, § 7 (West 1991). Under Massachusetts law, both offenses were punishable by imprisonment for not more than two and one half years in a house of correction or by fine. Ramos was sentenced to ten days in the house of correc-

* Of the Eastern District of Pennsylvania, sitting by designation.

tions for each of the offenses committed. Both sentences were to be served concurrently. Execution of the sentences was suspended, and six months of probation prescribed.

## I.

■ Ramos argues that the district court erred in ruling, under the agreed facts of this case, that the government need not prove that he knew he was violating 18 U.S.C. § 922(g)(1). We find no error in the district court's ruling. This court, and every court to have considered the issue, has held that the government need not prove the defendant knew he was violating the federal firearms law nor would "ignorance of the law" be a defense in such a prosecution. *United States v. Smith*, 940 F.2d 710, 713 (1st Cir.1991); *see also, United States v. Currier*, 621 F.2d 7, 10 (1st Cir. 1980) (citing cases). The government need prove only the requisite predicate offense and that the defendant knowingly possessed firearms with prescribed interstate connections. *United States v. Smith*, 940 F.2d at 713.

■ Ramos seems to agree in his brief that knowledge of the law is not an element nor would ignorance be a defense, but suggests that ignorance was germane to a defense of "entrapment by estoppel." According to Ramos, in *Smith* we held that entrapment by estoppel has been held to apply when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct. Ramos' claim of entrapment by estoppel is based on the following premises:

1. Both predicate convictions under Massachusetts law (for assault and battery and the violation of the protective order) were misdemeanors under Massachusetts law, resulting in no loss of civil rights beyond those necessarily surrendered while serving the sentence itself.

2. At the time of these state convictions and thereafter, Ramos possessed a valid Massachusetts state license to carry firearms. This license to carry was never suspended nor was it revoked by the issuing authority after he was convicted of the two misdemeanors, nor did Massachusetts law provide for the revocation or suspension of his license to carry as a result of these convictions.

3. At the time he purchased and received the firearms upon which the federal charges are based, the state license to carry was still valid and in effect.

Ramos argues that the prior issuance and continuation in effect of the state license after his state misdemeanor convictions, constituted an assurance by state officials that his purchase of firearms would be legal under federal as well as state law. Ramos contends that in the circumstances his present conviction under 18 U.S.C. § 922(g)(1) amounted to an entrapment by estoppel, resulting in a violation of his due process rights.

■ In *United States v. Smith*, 940 F.2d at 714 we acknowledged that several circuits and the Supreme Court had recognized the concept of entrapment by estoppel under certain, relatively narrow circumstances. We need not, however, try to determine whether this case would fit within that concept. Ramos did not claim entrapment by estoppel prior to or in connection with, his conditional guilty plea under Fed.R.Crim.P. 11(a)(2).[2] A defendant is normally deemed to waive arguments that he does not present to the district court. *United States v. Quesada–Bonilla*, 952 F.2d 597, 603 (1st Cir.1991); *Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 87 (1st Cir. 1990). This is particularly so where, having pled guilty, he conditionally preserves for appellate review only the district

---

**2. Rule 11. Pleas**
   **(a) Alternatives.**
   **(2) Conditional Pleas.** With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing

the right, on appeal from the judgment, to review of the adverse determination of any specified pre-trial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

court's adverse rulings on specified pretrial motions. Neither those motions nor the district court's Rulings and Memorandum of Decision nor the written plea agreement itself say anything about entrapment by estoppel. *See, e.g., United States v. Simmons,* 763 F.2d 529, 533 (2d Cir.1985) (The entry of a conditional guilty plea preserves only the specifically mentioned issue and waives all other nonjurisdictional claims). The argument Ramos presented, upon which the district court ruled, and which the plea agreement below preserved—that knowledge of violation of federal law was an element of the offense—raised a different legal question.

We add that it is uncertain that Ramos could have successfully reserved the entrapment by estoppel defense in connection with a conditional plea. Necessary to that defense would be a showing that the defendant reasonably relied on the state's advice that his conduct was legal. The issue of reasonable reliance normally requires factual development at trial. *See United States v. Smith,* 940 F.2d at 715. If so—especially if a jury determination were called for—entrapment by estoppel would be hard to resolve by a pretrial motion as contemplated under Fed.R.Crim.P. 11(a)(2). *Compare United States v. Yater,* 756 F.2d 1058, 1059 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985) (in a case where the defendant entered a conditional plea of guilty to a charge of conspiracy to distribute cocaine, the defendant waived his right to appeal the entrapment issue by his conditional guilty plea); *United States v. Sarmiento,* 786 F.2d 665, 668 (5th Cir.1986) (Entrapment is a defense on the merits that is waived by a conditional guilty plea). While we need not rule definitively at this time on whether entrapment by estoppel can *ever* be resolved by pretrial motion, we are clear that where defendant entirely failed to raise the entrapment issue

below at all, it is not available for appellate review here.

## II.

■ Next, Ramos argues that by the times alleged in Counts Two through Five of the indictment [April 4, 1990 through October 9, 1990], his civil rights had been restored and the Commonwealth of Massachusetts expressly allowed him the right to possess firearms. As a consequence, under an exemption stated at 18 U.S.C. § 921(a)(20), *infra,* Ramos claims that his state convictions for two misdemeanors should not be counted as predicate convictions for purposes of § 922(g). We disagree.

Ramos was charged with violating the following portion of 18 U.S.C. § 922:

> (g) It shall be unlawful for any person—
>> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> .    .    .    .    .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In *United States v. Rumney,* 867 F.2d 714 (1st Cir.), *cert. denied,* 491 U.S. 908, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989), we held that a conviction under 18 U.S.C. § 1202(a)(1) (the predecessor statute to 18 U.S.C. § 922(a)(1))[3] requires proof of three elements:

> (1) that the accused is a convicted felon;
> (2) who knowingly possessed a firearm;
> (3) which was connected with interstate commerce.

Although Congress amended § 1202(a)(1), the elements of the offense remain the same.[4] Thus, in order to convict under § 922(g), the government must prove that

---

3. Through the Firearms Owners Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986), Congress repealed § 1202(a) and amended § 922(h), incorporating the firearms possession offenses previously set forth in those two sections into an amended § 922(g). *United States v. Brebner,* 951 F.2d 1017, 1020 (9th Cir.1991).

4. *See also United States v. Shunk,* 881 F.2d 917, 921 (10th Cir.1989); *United States v. Sherbondy,* 865 F.2d 996, 1001–03 (9th Cir.1988); *United States v. Lehmann,* 613 F.2d 130, 132 (5th Cir. 1980).

defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year; i.e., that he is a convicted felon. Here, there is no dispute that Ramos was convicted of two such offenses. Section 921(a)(20)(B) excludes as a predicate conviction any conviction for "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Each of defendant's state court convictions, while classified as misdemeanors under Massachusetts law,[5] carry a maximum punishment of two and one half years imprisonment, and thus can serve as a predicate conviction under § 922(g)(1) if no other exceptions stand in the way.

However, our inquiry into this element of the offense does not end here, as 18 U.S.C. § 921(a)(20) further narrows the definition of "crime punishable by imprisonment for a term exceeding one year" for the purposes of § 922(g). That provision states:

> The term "crime punishable by imprisonment for a term exceeding one year" *does not include*—
>
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such as crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person had been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter,* unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (emphasis added). Thus, if the jurisdiction has expunged or set aside a defendant's conviction, issued a pardon, or restored the defendant's civil rights without expressly restricting a defendant's right to possess firearms, § 921(a)(20) provides that the offense will not constitute a "conviction" within the federal firearms law, regardless of whether or not the underlying crime was punishable by imprisonment for a term exceeding one year. Defendant argues that his prior conviction does not qualify as a "prior conviction" under § 922(g) because as a convicted misdemeanant in Massachusetts, he *never lost* any of his civil rights except, temporarily, for the period that he served his probation term. Thus, defendant contends, his prior conviction cannot serve as a predicate "conviction" for purposes of federal firearms laws.

Section 921(a)(20) expressly provides for reference to "the law of the jurisdiction in which the proceedings were held," i.e., here the law of Massachusetts, in order to determine what constitutes conviction of a predicate crime for purposes of 18 U.S.C. § 922(g). Cf. *United States v. Essick*, 935 F.2d 28, 30 (4th Cir.1991); *United States v. Gómez*, 911 F.2d 219, 220 (9th Cir.1990). Therefore, we must inquire further as to whether, and to what extent, Massachusetts restricts the civil rights of convicted misdemeanants and, whether and under what circumstances civil rights are "restored" by the state.

#### a) Restoration of Civil Rights

■ The only Massachusetts statute which purports to restore the civil rights of a convicted person operates solely in the context of juvenile convictions. Mass.Gen. Laws Ann. ch. 120, § 21 (West 1991). In the case of felons, a person once convicted loses the right to serve on a jury, Mass. Gen.Laws Ann. ch. 234A, § 4, subsection 7 (West 1991); the right to hold public office while serving the sentence; Mass.Gen.

---

5. Mass.Gen.Laws Ann. ch. 274, § 1 provides: "A crime punishable by death or imprisonment in the state prison is a felony. All other crimes are misdemeanors." Thus, under Massachusetts law, the important factor in determining whether a crime is a felony or a misdemeanor is not the duration of the sentence as such but rather where the sentence is to be served. Ramos was convicted of assault and battery under Mass. Gen.Laws Ann. ch. 265, 13A, and of a violation of a protective order under Mass.Gen.Laws Ann. ch. 209A, § 7. Both offenses carry a maximum term of imprisonment of two and a half years in a house of correction. Because these offenses are not punishable by imprisonment in a state prison, they are misdemeanors.

Laws Ann. ch. 279, § 30 (West 1991); the right to be appointed a police officer of a city, town or district, Mass.Gen.Laws Ann. ch. 41, § 96A (West 1991); and the right to carry firearms, Mass.Gen.Laws Ann. ch. 140, § 131. However, an individual convicted of a crime categorized as a misdemeanor under Massachusetts law, as was Ramos in this case, does not by law forfeit any civil rights. Hence, the proper inquiry here is whether an individual residing in a jurisdiction which does not strip him or her of any civil rights as a collateral consequence of conviction should be deemed, as appellant urges, to have had his civil rights "restored" for purposes of § 922(a)(1), after having served his/her sentence. Like the district court, we believe the answer is no.

We read the plain language of §§ 921(a)(20) and 922(g)(1), as well as the legislative history, to prohibit and punish firearm possession by persons formerly convicted of serious crimes, subject to a narrow exemption for convicted persons whom a state has later taken affirmative measures to release from the significant consequences of having been convicted. The exemption by its terms applies solely to persons who, following conviction, have been pardoned, or had their convictions expunged or set aside, or who have had their civil rights *restored*. Exempted persons, therefore, are convicted individuals whom state authorities have later decided to relieve from all or certain of the customary adverse consequences associated, in that jurisdiction, with their convictions. In cases where such state-declared post-conviction rehabilitation has occurred, Congress has concluded that the convicted persons should once more be eligible to carry and ship firearms, free from federal penalty. Only if the state pardon, expungement, or restoration of civil rights has expressly provided that the person may *not* ship,

transport, possess, or receive firearms, will the convictions still count for purposes of § 922(g).

Our above reading comports with the plain words of the statute, which, relevantly, makes an exception only for a conviction for which civil rights were "restored." The word "restore" means "to give back (as something lost or taken away)." *Webster's Third New International Dictionary* (1971). The point is not just that civil rights were never lost, but that, following conviction, such rights were affirmatively "restored." There is no way to give "restored" its ordinary meaning and reach the result appellant seeks.[6]

This reading is also consistent with the rule of construction giving a common meaning to closely grouped terms. Here, the phrase "a conviction ... for which a person ... has had civil rights restored" is joined with three other actions—a pardon, the set-aside of a conviction, and the expungement of a conviction—which all require the taking of some affirmative step following a conviction. It is reasonable, in this context, to read "a conviction ... for which a person ... has had civil rights restored" to mean an analogous affirmative step to "restore" what the conviction originally took away.

This reading is strengthened by the final portion of § 921(a)(20), which provides that a conviction "shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Obviously, the pardon, expungement, or *restoration* of *civil rights* could not itself "expressly provide" for any such qualification unless the pardon, expungement or *restoration* were itself a distinct and separate action. The mere failure of the Massachusetts legisla-

---

**6.** Appellant argues that his rights were "restored" when he finished serving his sentence— *viz.*, while he served the mandated probationary period, certain of his civil rights were diminished. But if this is so, every convicted felon will have had civil rights "restored," at least in part, when he is released from prison, probation or parole, making the exception so broad as to

swallow § 922(g) entirely. We think the phrase "conviction ... for which a person ... has had civil rights restored" relates to civil rights lost as a collateral consequence of conviction. (In some jurisdictions, pardons are accompanied by the express "restoration of all civil rights." *See, e.g., Thrall v. Wolfe*, 503 F.2d 313 (7th Cir.1974), *infra.*)

ture to provide that convicted persons will lose their civil rights as the collateral consequence of convictions for misdemeanors is not such a distinct event. Only some affirmative, additional step can constitute the requisite pardon, expungement or *restoration* of rights, and only this latter can be an exception under § 921(a)(20) to the "felon in possession" rule. To hold that any predicate conviction occurring under state laws that do not deprive a convicted criminal of any civil rights is automatically a nonqualifying conviction under § 921(a)(20) is to turn the statute on its head. The result runs contrary to the plain meaning of the verb "restore" and to the structure of, and the related provisions within, the statute.

Appellant argues that because Massachusetts does not strip persons convicted of misdemeanors of any of their civil rights, all persons so convicted are exempted under § 921(a)(20) once they have completed their sentence. This argument emphasizes the supposed inconsistency in exempting from the federal firearm law persons whose rights have been "restored," but not exempting those whose rights were never taken away in the first place. Why, it is said, should a person who committed a crime entailing no collateral loss of rights be open to classification as a "felon in possession," while someone else whose rights were restored after first being lost, is exempted from that classification? There is a perfectly reasonable answer to this question.[7] Legislators could have wished to exempt from "felon in posses-

sion" punishment those exceptional individuals found worthy by state officials of an individualized "pardon," "expungement" or restoration of civil rights. Special actions of that nature would reflect an extenuating judgment that the convicted man or woman was not deserving of the conviction, or at least that there were exceptional mitigating factors in his or her favor. When the state makes an individualized judgment of this type, it makes sense thereafter not to take the prior conviction into account for "felon in possession" purposes *unless* officials providing the pardon or expungement, or restoring the civil rights, have at the very same time announced their wish to restrict the right to possess firearms in the future. By the affirmative act of pardon, expungement or restoration, the state has declared its renewed trust in that person. This rationale does not apply with equal force, however, where the legislature of the state has simply failed to provide that those found guilty of misdemeanors will lose any civil rights as a collateral consequence of their convictions. There is no individualized official judgment, as in a pardon or expungement, that the particular person in question has demonstrated some reason to be singled out from Congress's overall judgment that persons convicted of serious crimes not be allowed to carry weapons. Unlike the situation provided for in the statute, appellant here has not been found more trustworthy than the run of his convicted fellow misdemeanants, nor is there any focused indication that the state ever wished to exclude him as an individual from the reach of the federal gun laws.[8]

---

7. In saying there is a reasonable answer, we do not say the answer is or is not ideal. As judges, we do not sit to pass on the wisdom of legislation. We say merely that the distinction embodied in the statute is rational and, therefore, courts are not free to reject it as somehow not intended. As later noted, the legislative history explains why Congress wished to make the distinction.

8. It could be argued that Massachusetts' failure to take away Ramos' civil rights, coupled with the fact that he continued to hold a valid state license to carry at the time he received the firearms on which his present federal conviction rests, indicate that Massachusetts affirmatively endorsed defendant's right to possess firearms. This is perhaps Ramos' best argument,

given the legislative history showing Congress' desire to accommodate the state's judgment as to the right of individuals to possess or deal in firearms, *infra*. We do not think, however, that the state's mere willingness that any former misdemeanant like Ramos continue to be allowed to possess weapons under state law is tantamount to an express desire by the state that he be exempted from 18 U.S.C. § 922(g)(1). Massachusetts has shown no more here than indifference to Ramos' situation—an indifference that does not overcome the clear federal policy that persons who have committed crimes as serious as Ramos committed *not* be entrusted with firearms. That Massachusetts does not feel the same way is immaterial.

The legislative history of § 921(a)(20) supports the above reading and cuts against appellant's construction. As the government points out, a desire to overrule the effects of *Thrall v. Wolfe*, 503 F.2d 313 (7th Cir.1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975) figured prominently in the legislative rationale for enacting § 921(a)(20), with its language specifically validating state pardons, expungements and restorations of civil rights. *See* 1982 Senate Committee on the Judiciary Report, No. 97–476, p. 18; 1984 Senate Committee on the Judiciary Report, No. 98–583, p. 7. In *Thrall*, notwithstanding the governor's granting to Thrall, individually, of what was called a "Full Pardon and Restoration of all Civil Rights" with express right to receive, possess or transport firearms, the federal court upheld the refusal by federal authorities to license him as a dealer and manufacturer of firearms. *Id.* References in the legislative history show that Congress's intent in enacting § 921(a)(20) was to make it clear that states would henceforth have the ability to wipe the slate clean in respect to particular convictions by issuing pardons and by other similar individualized and affirmative procedures such as expungement or restoration of rights. Nowhere, however, is there any suggestion that the mere failure of a state, when legislatively creating certain classes of crimes, to provide for the taking away of civil rights, would suffice to remove those convictions from the roster of convictions counting for "felon in possession" treatment.

We are aware that several other federal courts of appeals have arrived at outcomes arguably different from ours. *See, e.g., United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990); *United States v. Gómez*, 911 F.2d 219 (9th Cir.1990); *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991); *United States v. Essick*, 935 F.2d 28 (4th Cir. 1991).

All these cases, to a greater or lesser degree are factually different from the present, in that in every instance the state's "restoration" of civil rights can be said to have been manifested in a more positive fashion than here. For example, in *Cassidy*, perhaps the leading authority, defendant had received upon release from prison a "Restoration to Civil Rights" certificate from the Ohio Adult Parole Authority. The court found that the "restoration certificate" given to Cassidy constituted a restoration of civil rights under 18 U.S.C. § 921(a)(20) but concluded nevertheless that this restoration of civil rights did not preclude his federal prosecution as a felon-in-possession/receipt because other provisions of Ohio law restricted Cassidy from possessing a firearm. In *Gómez*, the Ninth Circuit held that Idaho's general provision restoring rights to convicted felons upon completion of their prison or probation terms was the restoration of civil rights contemplated in the federal statute and reversed defendant's conviction as felon-in-possession. Similarly, in *Essick*, the Fourth Circuit concluded that a North Carolina statute automatically restored the civil rights of convicted felons upon their discharge from prison, probation or parole and reversed the conviction. Finally, in *Dahms*, the Ninth Circuit again reversed a felon-in-possession conviction based upon its review of Michigan law. Although Michigan had no restoration statute, after reviewing the whole of Michigan law the court found the functional equivalent of a general civil rights restoration statute.

Because of the enormous variety of state laws taking away and restoring particular rights to various classes of convicted persons, it is not easy to find a common theme. We have focused herein on the specifics of the instant case, leaving for another day other patterns of state or local law. To the extent the analysis in any of the foregoing cases is contrary to our own, we respectfully do not accept it.

*The judgment of the district court is affirmed.*

TORRUELLA, Circuit Judge (dissenting).

While I am glad to concur in part I of the majority opinion, I disagree with the opinion's interpretation of § 922(a)(1) in part II, and thus, respectfully dissent.

Title 18 U.S.C. § 921(a)(20) provides that if a state has restored a defendant's civil rights, (following conviction), without expressly restricting a defendant's right to possess firearms, that offense cannot serve as a predicate offense for purposes of § 922(g)—regardless of whether the underlying crime was punishable by imprisonment for a term exceeding one year.

It is clear from the language of the provision that when Congress enacted § 921(a)(20) it intended that courts refer to state law, when the predicate conviction is for a state crime, to determine whether an individual should be subject to federal firearms laws by virtue of a criminal conviction. *Cf. United States v. Essick*, 935 F.2d 28, 30 (4th Cir.1991); *United States v. Gómez*, 911 F.2d 219, 220 (9th Cir.1990). The majority correctly indicates that Massachusetts does not have a general civil rights restoration statute. Rather, Massachusetts *affirmatively* restricts the civil rights of a convicted felon, including his/her rights to carry a firearm.[9] However, an individual convicted of a crime categorized as a misdemeanor under Massachusetts law, as was Ramos in this case, does not lose any of his/her civil rights, and can legally possess a firearm in the state of Massachusetts even after conviction.

It is apparent from its legislation that Massachusetts has made a clear determination that an individual like Ramos, who stands convicted of a misdemeanor under Massachusetts law, does not pose such a danger to himself or society to merit a suspension of his civil rights, including his right to carry a firearm. In fact, the statement of undisputed facts which accompanied Ramos' guilty plea established that on May 12, 1988, Ramos was issued a license to carry firearms by the Commonwealth of Massachusetts, and that at the time of the purchase and receipt of each of the firearms described in Counts I–V of the indictment, defendant's license to carry was valid and in effect. To hold that because Ramos never had his civil rights taken away they could not have been restored and therefore he is a "felon in possession," goes against the clear congressional intent to grant states the discretion to decide who can and cannot carry a firearm within that state. It also flies against all logic and common sense.

If Ramos never *lost* his civil rights it is beyond my understanding how the majority can say that he had to have his civil rights restored to avoid federal prosecution. This interpretation of "restored" goes against the "ordinary meaning" of the word. "Restored," as the majority correctly states, is defined by Webster's Third New International Dictionary (1971) as follows: "to give back (as something lost or taken away)." If we assign "restored" its ordinary meaning, then we find that Ramos cannot have his civil rights "restored" because they were never *lost or taken away*.

As it stands now, this court would grant relief to an individual whose crime was serious enough to merit an initial suspension of civil rights, so that restoration is required, but deny relief to an individual whose crime was not considered serious enough by the particular state to merit a suspension of civil rights. This result is at best unfair, but more importantly it is inconsistent, and in contravention with the clear intent of § 921(a)(20). If, as I think it did, Congress intended the "felon in possession" definition to apply only to those convicted of crimes serious enough to merit an initial suspension of civil rights by the convicting state, then Ramos is beyond the reach of § 922(g).

Congress has afforded states the discretion to decide who should have the privilege of carrying a firearm and who should not. Nowhere in the text of § 921(a)(20) does it say that the action of the state has to be made "affirmatively," and the majority provides no authority supporting this conclusion other than their own conclusion. If the majority feels that § 921(a)(20) is in any way not clear—a logical position considering the text of § 921(a)(20)—the prop-

9. See Mass.Gen.Laws Ann. ch. 234A, § 4, subsection 7 (West 1991); Mass.Gen.Laws Ann. ch. 279, § 30 (West 1991); Mass.Gen.Laws ch. 41, § 96A (West 1991); and Mass.Gen.Laws Ann. ch. 140, § 131.

er disposition is to erase Ramos' conviction for purposes of § 922(g) and make a suggestion to Congress to clarify the provision. Clear precedent from this court mandates that:

> [i]f a statute is ambiguous, this court must interpret it in favor of the criminal defendant. The rule is based both on fairness to individuals in providing adequate notice and the belief that legislatures and not courts are the appropriate bodies for defining criminal activity.

*United States v. Stoner,* 927 F.2d 45, 47 (1st Cir.1991) (citing *United States v. Anzalone,* 766 F.2d 676, 680–81 (1st Cir.1985)). Just as we cannot manufacture ambiguity in order to defeat the intent of a statute, *Stoner,* 927 F.2d at 47 (citation omitted), we also cannot ignore vagueness in order to defeat the claim of a defendant.

Clearly in this case Massachusetts meant for Ramos to have this privilege to bear arms. Thus, I believe that the civil rights restoration clause of § 921(a)(20) nullified Ramos' prior conviction for purposes of § 922(g), and on those grounds his conviction under that statute should be reversed.

I disagree that this conclusion means, as the majority fears, that every convicted felon will have his/her civil rights "restored," at least in part, when he/she is released from prison, probation or parole, making the exception so broad as to swallow § 922(g) entirely. As the majority itself points out, the state of Massachusetts makes an *affirmative* distinction between individuals it considers felons, and individuals it considers misdemeanants—in Massachusetts, felons are not entitled to carry firearms, while misdemeanants are. Hence, the exception does not swallow the rule. Simply because Massachusetts has not followed the procedure followed by other states, which means enacting legislation specifically restoring the civil rights of an individual, does not grant this court the authority to curtail, through judicial legislation, the discretion given to states by congressional mandate.

The intent of § 922(g) is made clear by the majority on page 1009 of its opinion—that persons convicted of serious crimes not be allow to carry weapons. However, Congress grants states a significant amount of discretion to say who is a person convicted of so serious a crime that he/she should not be allowed to carry a weapon. Massachusetts' judgment on this matter is clear—to allow misdemeanants, like Ramos, to carry weapons. The fact that he had a legal license to carry firearms issued by the State of Massachusetts, in addition a legislation clearly stating that felons, and not misdemeanants, lose the right to carry firearms, is about as "focused" an indication as we can get from a state that persons like Ramos, and those similarly situated, may carry firearms.

It is no surprise that several other federal courts of appeals have arrived at outcomes arguably different from the majority's. *See, e.g., Gómez, supra,* 911 F.2d 219; *United States v. Dahms,* 938 F.2d 131 (9th Cir.1991); *Essick, supra,* 935 F.2d 28. I see no difference from the Massachusetts' general legislation taking away the right of a convicted felon to carry a firearm, and the more general civil rights restoration statutes by other states.

As Massachusetts intended to permit Ramos to carry a weapon, and it was this intent by the state which Congress sought to protect through § 922(a)(20), we have no authority to undermine it through judicial interpretation or otherwise.

I dissent.