UNITED STATES of America, Appellee,

v.

Gerald R. CARON, Defendant, Appellant.

No. 79–1250.

United States Court of Appeals,
First Circuit.

Argued Jan. 9, 1980.

Decided Feb. 7, 1980.

Constance L. Rudnick, Boston, Mass., with whom Brian J. McMenimen and Gargiulo & McMenimen, Boston, Mass., were on brief, for appellant.

James F. X. Dinneen, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This frivolous appeal may be readily disposed of. Defendant Caron was convicted, following a jury trial, on three counts of illegal firearm activity under 18 U.S.C. § 922(a)(1) (dealing in firearms without a license) and 26 U.S.C. §§ 5861(d) and (e) (unregistered possession and transfer of a sawed-off shotgun). We ordered a new trial because of the court's failure to put to the jury the defense of entrapment. *United States v. Caron*, 1 Cir., 1978, 588 F.2d 851. This having been done, but to no avail, defendant is again before us. He contends that he should have received a

directed verdict of acquittal because of the government's "outrageous" involvement in the crimes, viz., because "Agent Monteiro repeatedly badger[ed] Mr. Caron to procure guns for him, ignoring Mr. Caron's repeated assertions that he wanted nothing to do with guns, but Monteiro set up two totally unrelated illicit deals for Mr. Caron."

■ In seeking an acquittal defendant ignores the fact that his testimony as to this repeated badgering was contradicted by Monteiro, as were also his protestations that he wanted nothing to do with guns. Indeed, in light of these alleged protestations,[1] defendant proved remarkably accommodating with regard to gun dealing, even on his own testimony. The only question is whether the government's inducement of defendant to commit the crimes could be held so outrageous or, as the defendant puts it in his brief, so "extensive [that it] precluded prosecution on the grounds of due process." *See Hampton v. United States,* 1976, 425 U.S. 484, 492–93, 96 S.Ct. 1646, 1651, 48 L.Ed.2d 113 (Powell, J., concurring), 498–500, 96 S.Ct. 1654–1655 (Brennan, J., dissenting); *United States v. Russell,* 1973, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366; *United States v. Johnson,* 1 Cir., 1977, 565 F.2d 179, *cert. denied,* 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780.

In addition to defendant's constant complaint that agent Monteiro "lied" to him, the first charge is that Monteiro, for the purpose of "furthering his role," purported to accept defendant's request to help defendant sell "pot." Admittedly, defendant initiated the request; admittedly, defendant was engaged in selling.[2] The single sale Monteiro attempted to arrange (unkindly enough, to an undercover agent) fell through. Secondly, Monteiro gave defendant a sample pair of ladies' boots, which Monteiro said he could supply by the case cheaply enough for defendant to make some money. No actual sales materialized here, either. Defendant testified that Monteiro did not even tell him the boots to be supplied would be stolen goods.[3] On his own testimony, defendant showed no reluctance to accept Monteiro's suggestion.[4]

We find it hard to think that anyone could believe this to be such outrageous government undercover activity as to violate due process. The only outrage was that defendant was taken in.

■ Alternatively, defendant complains of the court's charge to the jury that it "must distinguish between a trap which is laid for an unwary, innocent person and a trap which is laid for an unwary criminal." Defendant noted an "object[ion] to the use of that phrase because it can lead this jury to believe that because Caron was a criminal, in the sense of a law breaker, he could not be entrapped."

It is axiomatic that the charge must be considered as a whole. *United States v. Park,* 1975, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489, and cases cited therein. The sentence to which defendant objects came in the middle of seven pages of detailed instructions on how to decide the entrapment issue. To say that by this single sentence the jury could have thought the court was eliminating the issue of entrapment, making seven pages of instructions superfluous, is preposterous.

Defendant's position, viewing the sentence simply by itself, is that because of his "involvement in criminal activities other than those relating to firearms," the jury would read the instruction to mean that, as a criminal, he was not entitled to an entrapment defense. An unfulfilled willingness

---

1. "I don't want anything to do with them, period." "I told him I positively don't have any guns. I don't want nothing to do with guns."

2. "I was trying to make pot deals with everybody at the time."

3. Q. "Did you care?" A. "I didn't care. No." Q. "You just wanted to sell them to get the money?" A. "That is right. . . ." Q. "The same thing with selling marijuana. You didn't care whether it was legal or not, right?" A. "That is right."

4. Q. "What did you say when he asked you if you wanted some boots?" A. "I said, 'Sure.'"

922

to sell shoes of questionable origin hardly made defendant a criminal, and one might wonder how seriously a jury would view street sales of pot. More important, it would be contradictory on the face of it to construe the sentence as putting the issue of entrapment to the jury, and, at the same time, saying that defendant was precluded from claiming it since he was a criminal. Not only would this seem a strange procedure, but elsewhere the court expressly contradicted it. The court frequently admonished the jury that the only crimes it was concerned with were those alleged in the indictment.

Consistent with this, the jury had been told that the government must first establish that defendant's conduct met the elements of a firearm offense. Then, it must nevertheless acquit unless the government proved that defendant was not entrapped. Thus, by the time the jury considered entrapment, it already would have decided that defendant *was,* to a degree, a firearm law breaker. The issue had become whether this unlawful activity stemmed from defendant's predisposition, or was the result of improper government inducement. The jury logically must have understood the "innocent" versus "criminal" reference in this sense.

■ If only to avoid a complaint such as this, it might have been better if the court had said "criminally-minded" rather than "criminal," but, particularly on the charge as a whole, we see no possible prejudice.

This may be an appropriate time to remind district judges, and the U.S. Attorney, that bail need not be continued during a frivolous appeal. 18 U.S.C. § 3148.

*Affirmed.*