UNITED STATES of America, Appellee,

v.

Garret R. DILLON, Defendant,
Appellant.

No. 82–1736.

United States Court of Appeals,
First Circuit.

Argued Feb. 1, 1983.

Decided March 1, 1983.

Michael S. Washor, New York City, with
whom Joseph J. McCarthy, Jr., and Washor,
Greenberg & Washor, New York City, were
on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S.
Atty., Portland, Maine, with whom Richard
S. Cohen, U.S. Atty., Portland, Maine, and
William H. Browder, Jr., Asst. U.S. Atty.,
Bangor, Maine, were on brief, for appellee.

* Of the District of Massachusetts, sitting by des-

Before ALDRICH and BOWNES, Circuit
Judges, and WYZANSKI,* Senior District
Judge.

BAILEY ALDRICH, Senior Circuit
Judge.

Defendant Dillon seeks to persuade this
court to reverse its settled rule that the
Coast Guard is permitted to board a vessel,
in this case the 46' sloop yacht RELENT-
LESS, for a safety and document check
without cause. We are extraordinarily un-
likely to reverse our recent and repeated
holding that the boarding statute is consti-
tutional. *United States v. Arra*, 1 Cir.,
1980, 630 F.2d 836, 841; *United States v.
Hilton*, 1 Cir., 1980, 619 F.2d 127, 131, *cert.
denied*, 449 U.S. 887, 101 S.Ct. 243, 66
L.Ed.2d 113. *Cf. United States v. Piner*, 9
Cir., 1979, 608 F.2d 358 (2–1) (boarding af-
ter dark). Defendant's motivation stems
from his conviction under 21 U.S.C.
§§ 841(a)(1), (b)(6) & 846, as a result of
discovery of a cabin-load of marijuana,
which advertised its presence even before
the ship's papers could be requested. Al-
legedly, the court improperly denied his mo-
tion to suppress, *sub nom. United States v.
Whitmore*, D.Me., 1982, 536 F.Supp. 1284.
We affirm.

■ Defendant's attempt to analogize a
boat with a dwelling because "every sailor
considers his ship his home," fails, among
other reasons, because a boat is much more
than a home; examination of safety equip-
ment and documents may not even involve
the living quarters. The slight ultimate in-
vasion in the present case came not only as a
result of defendant's failure to produce the
paper; it was also the result of following an
odor of marijuana noticeable topsides.

Correspondingly, the analogy of random
searches of automobiles fails because of the
far greater importance of a safety check.
Whether a boat has on board registration
papers corresponding with her displayed
identification may be comparatively insig-
nificant—although much more important
than an automobile registration—but safety
equipment, approved life preservers, func-
tioning fire extinguishers, fuel storage, etc.,

ignation.

is a different matter. Law review writers may be impressed by statistics indicating that relatively few marine accidents are due to lack of required equipment, *see* Note, *High on the Seas: Drug Smuggling, the Fourth Amendment, and Warrantless Searches at Sea*, 93 Harv.L.Rev. 725, 742 (1980), but, besides implicitly criticizing the value of the safety requirements, this overlooks the fact that realization of being subject to inspection at any place or time may be the best impetus for compliance. If such an inspection leads to the discovery of unlawful cargo, that is the known risk that contraband carriers take, rather than a reason for their invoking the Fourth Amendment.

The note writers' suggestion, *id.*, at 744, for the establishment of shore facilities at which every vessel would be routinely inspected on advance notice, and thus avoid a selection that would be an "abuse of discretion," viz., a subterfuge, is, if we may stay ashore, to put the cart before the horse. Innocent and guilty vessels being all freely inspectable, there is no reason to adopt special, expensive procedures to avoid alleged "gut" intrusion on the guilty. The writers further overlook the statement in the one case at all favorable to them, *United States v. Piner*, 608 F.2d, ante, at 360, that under way inspection, without notice, may be the most valuable from the safety standpoint.

Although we rest on this, we note that this defendant is in a peculiarly poor position to object because the yacht was first observed on the high seas bound for the approaches to Penobscot Bay, Maine, and was boarded immediately upon entering inland waters. *Cf. United States v. Green*, 1 Cir., 1982, 671 F.2d 46; *United States v. Zurosky*, 1 Cir., 1979, 614 F.2d 779, 787–88, *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826. It was not improper that the decision to board was made earlier. In addition to this crossing, it was observed, before dispatch of the small boat, that the yacht was sluggish and low in the water. An unaccustomary heavy load of something (in fact, 5½ tons of marijuana), was plainly indicated.

Having written a painstaking and conclusive opinion making apparent the friv-

olousness of an appeal, the district court should not have continued defendant on bail. *United States v. Caron*, 1 Cir., 1980, 615 F.2d 920, 922. The judgment is affirmed. An order shall issue forthwith revoking bail without awaiting mandate. First Circuit Rule 16.