UNITED STATES of America, Appellee,

v.

Gerald R. CARON, Defendant, Appellant.

No. 94–2026.

United States Court of Appeals,
First Circuit.

Heard May 1, 1995.

Decided July 31, 1995.

Order Granting Limited Rehearing
En Banc Sept. 21, 1995.

Owen S. Walker, Federal Public Defender, for appellant.

Brian T. Kelly, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., was on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant Gerald R. Caron appeals from convictions for four counts of violating the felon-in-possession federal firearms statute, 18 U.S.C. § 922(g). Two counts alleged that Caron, having previously been convicted of a crime punishable by imprisonment in excess of one year, possessed a semi-automatic rifle and ammunition in July of 1993. Two other counts alleged possession of six firearms and ammunition in December of 1993.

■ This is the third time appellant has been before this court in connection with a federal firearms offense and the third time we have confronted a defense of entrapment.[1] Here the asserted defense is "entrapment by estoppel," the claim that issuance by Westport, Massachusetts authorities of a Firearms Identification (FID) card, allowing purchase and possession of a firearm under state law, estopped the federal government from prosecuting under federal law. In addition to this principal contention, appellant raises several other issues concerning the validity of a search and sentencing. We affirm.

*Entrapment by Estoppel.* The essential facts are the following. Appellant had been convicted of three Massachusetts felonies involving breaking and entering in the 1950s and 1960s; a California charge of attempted murder in 1970; and three federal firearms offenses in the District of Massachusetts in 1980 (*see* note 1, above). In June of 1991,

having learned that one with no state or federal felony convictions within the previous five years can qualify for a Massachusetts FID card, Mass.Gen.L. ch. 140, § 129B, appellant applied to the Westport Police Department for the card. Issuance of such a card followed a routine record check and was accompanied by no statement concerning federal firearms law. In subsequent talks with federally licensed firearms dealers, appellant was told that guns could not be sold to him, but avers that he understood that the FID card allowed him to possess guns.

On July 14, 1993, after police had responded to a call for help, appellant was apprehended on a porch in Fall River, holding a rifle, with finger on the trigger, intoxicated, talking to a woman. A .22 caliber rifle and 185 rounds of ammunition were seized. On September 28, 1993, a federal Bureau of Alcohol, Tobacco, and Firearms (ATF) agent called at appellant's Westport home and asked to see any conventional firearms. Appellant replied that he had none, only flintlock and other nonconventional weapons. At this time appellant was informed that state law did not supersede federal law and that under federal law he could not possess conventional firearms. Finally, on December 1, 1993, police and ATF agents executed a federal search warrant and seized six conventional firearms and 6,823 rounds of ammunition.

Appellant moved, before trial, that the indictment be dismissed on the ground that issuance of the FID card had worked an "entrapment by estoppel." The court ruled that decision would await factual development at trial. At the end of the first day of trial, counsel for appellant made an offer of proof that appellant would testify that he believed that his FID card gave him the right to possess firearms, that "the law was

---

**1.** In *United States v. Caron,* 588 F.2d 851 (1st Cir.1978), we set aside convictions under firearms counts for dealing with a firearm without a license, possession of an unregistered shotgun, and transfer of a shotgun without government approval, holding that the trial court had erred in not submitting an entrapment instruction to the jury, despite defendant's "repeated ... and perhaps perverse[ ] refusals to admit that he had

sold any guns." *Id.* at 852. In *United States v. Caron,* 615 F.2d 920 (1st Cir.1980), after a jury rejected defendant's claim of "outrageous" government involvement in repeatedly badgering him despite his repeated assertions that he wanted "nothing to do with guns," *id.* at 921, we affirmed the conviction, terming the appeal frivolous. *Id.* at 920.

the law and the distinctions that we make between federal and state law were not something that meant anything significant to him," that he did not think it possible that what was specifically allowed by state law could be prohibited by federal law, and that he was never shown a copy of any federal law prohibiting felons from possessing firearms. The court ruled that for a defense of entrapment by estoppel to be made out, "a federal officer or a judicial officer, not some state official" would have to give the erroneous advice, but that in this case there had been no advice at all given as to what federal law allowed or proscribed.

■ Since the issue is whether or not there was sufficient evidence to support a theory of defense, our review is plenary. *United States v. Flores*, 968 F.2d 1366, 1367 (1st Cir.1992). No precedent in this circuit is squarely applicable. In *United States v. Smith*, 899 F.2d 116, 118 (1st Cir.1990), our statement that "federal law forbids possession of a firearm by a previously convicted felon, [FID] card or no card," had, in context, reference only to the credibility judgment of the court that a police officer shared that understanding, not to its validity. In *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991), the claim of entrapment was based on a statement by a federal ATF agent to defendant that he should keep his weapons because he was to be of assistance in investigating gun club members. We stated that the defense of entrapment by estoppel had been recognized by some circuits and the Supreme Court "under certain, relatively narrow, circumstances." *Id.* at 714. We characterized "the underlying concept" as entitling one "to rely on the representations of an authorized government official as to the legality of his conduct." *Id.* Reviewing the totality of circumstances surrounding the agent's conduct under a standard of fundamental fairness, we

concluded that the "mixed message" given by the agent, with no allegation that he had said that keeping the guns was in fact legal, would not have justified a finding of entrapment. *Id.* at 715. In *United States v. Ramos*, 961 F.2d 1003, 1006 (1st Cir.1992), we did not reach a claim that issuance of a state firearms license constituted entrapment by estoppel, holding that it had been waived by failure to raise the issue prior to entering a conditional plea.

Although we have not decided the issue presented here, three other circuit courts have. In *United States v. Bruscantini*, 761 F.2d 640 (11th Cir.1985), a defendant made an estoppel argument based on advice from a state judge, who had accepted his plea of *nolo contendere* in an earlier case, that he was not a convicted felon. He invoked *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) and *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959).[2] Chief Judge Godbold, writing for the court, observed that both *Cox* and *Raley* involved state officials' interpretations of state law leading to state convictions, and commented:

> Where, however, the government that advises and the government that prosecutes are not the same, the entrapment problem is different.... [I]f one benefit of the estoppel defense is that it encourages government officials to better know and articulate the law, that benefit is not present where application of the defense would penalize the wrong government—the government that prosecuted appellant rather than the government that mistakenly and misleadingly interpreted the law.

761 F.2d at 642.

The Fourth Circuit applied this reasoning in a case where the estoppel defense in a federal firearms prosecution was based on a

---

2. In *Cox v. Louisiana*, the Chief of Police and other officials told demonstrators that they could demonstrate across the street from a courthouse; they were subsequently convicted of violating a statute barring picketing "in or near" a courthouse. In *Raley v. Ohio*, the Chairman of Ohio's Un–American Activities Commission had told four people being questioned that they had a right to rely on a state constitutional privilege against self-incrimination. The state supreme court had held that they were presumed to know that under Ohio law an immunity statute had deprived them of the privilege. In both cases the Court held that to affirm the convictions "would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." 360 U.S. at 438, 79 S.Ct. at 1266; 379 U.S. at 571, 85 S.Ct. at 484.

state trial judge's advice that a defendant could use firearms for hunting purposes. *United States v. Etheridge*, 932 F.2d 318, 320 (4th Cir.1991). And in *United States v. Brebner*, 951 F.2d 1017 (9th Cir.1991), the Ninth Circuit dealt with an estoppel defense based on conversations defendant had with two federally licensed firearms dealers in which he expressed his erroneous view that the dismissal of his prior state felony convictions made it legal for him to possess firearms, and alleged similar misstatements by state and local officials. The court held, first, that although perhaps both dealers should have made further inquiries as to the legality of the transactions, neither affirmatively misled the defendant as is required to support entrapment by estoppel. *Id.* at 1025–26. Second, it held that affirmative misleading by state and local officials was of no consequence since "these officials lacked the authority to bind the federal government to an erroneous interpretation of federal law." *Id.* at 1026.

Appellant seeks to avoid the thrust of these authorities by framing most of his argument as a due process claim based on fundamental fairness, citing *Raley* and *Cox*.[3] But he is forced to stretch those decisions in two important ways to make them cover his case. In the final analysis, we consider the unfairness faced by appellant to be no greater than that imposed on all who are "trapped" by the principle that ignorance of the law is no defense.

As we have noted, *Raley* and *Cox* involved state officials with authority in the particular situation affirmatively misleading defendants about what was permitted under state law. The first extension was made by a district court in *United States v. Brady*, 710 F.Supp. 290 (D.Col.1989), in which a state judge with criminal jurisdiction over defendant gave him erroneous advice about *federal* law—that he could continue to possess a firearm when hunting or trapping in the course of his occupation, a trapper of animals including coyotes. The court, relying on *Raley* and *Cox*, held that to convict defendant as a federal felon in possession would violate due process. *Id.* at 294. It refused to follow *Bruscantini* in limiting entrapment by estoppel to a misleading by an officer of the prosecuting government. Instead, it made the point that a state judge has the constitutional duty to interpret and apply federal law. *Id.* at 295. It therefore held that "a person is entitled to rely on a state court's views of federal law." *Id.* at 296.

For the second extension, appellant cites to us another district court case, *United States v. Conley*, 859 F.Supp. 909 (W.D.Pa. 1994), where the estoppel defense was based on lax enforcement by both state and local officials of Pennsylvania's law proscribing poker machine gambling. While the court ultimately held that defendants had not been expressly assured by any government official at any level that their conduct was legal under either federal or state law, *id.* at 936, it did reject the circuit court precedents we have cited and relied on *Brady* in rejecting a government plea to restrict the availability of the estoppel defense to misleading advice by a federal official. *Id.* at 932. In so doing, it went beyond *Brady*, which, as we have noted, confined its ruling to misleading by state judges who have an obligation to interpret and apply federal laws.

Appellant would have us extend *Raley* and *Cox* to hold the entrapment by estoppel defense available when the state conduct not only does not involve a state judge, nor an express assurance of legality under federal law, but no statement at all—only the issuance of a state firearms license. Appellant argues that his belief that state law and federal law could not differ converts the FID card into such misleading assurance as to federal law that the Due Process clause is triggered.

---

**3.** Appellant also relies on *United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987), where a federally licensed firearms dealer, defendant's attorney, a state trial judge, and a deputy district attorney all made misleading statements about defendant's legal ability to possess a firearm. As the Ninth Circuit subsequently made clear, the estoppel-triggering statement was that of the federally licensed dealer; the other statements bore solely on the issue of reasonable reliance on the dealer's statement. *United States v. Brebner*, 951 F.2d 1017, 1027 (9th Cir.1991). Thus *Tallmadge* is in accord with the line of circuit authority we have cited.

Without saying that affirmative misleading on the part of a state official acting in a position of some authority on the matter—as in *Brady*—can never rise to the level of a due process defense, we refuse the invitation to follow this trail. We live under a federal system, with national and state governments coexisting with a dual legal structure. We are expected generally to know what each government requires. There are inevitably many areas where state and federal laws overlap. Appellant would in essence have us proclaim that the more permissive criminal law trumps the more severe one unless, somehow, either the permissive government or the stricter government makes sure that the individual actor is informed of both sets of requirements. While a state licensing authority, under a more permissive law, may very well try to disseminate information about federal law, we see no constitutional requirement that it do so. And in cases where only a law and not a license is involved, we see no practical way in which actual notice of disparate requirements could be given. Moreover, disparity in the criminal law field can run in the opposite direction. If the federal law were more lenient, we could not contemplate a constitutional requirement that the federal government must alert an individual concerning the differing standards of all the states.

We also endorse the reasoning of the *Bruscantini* court, that the sanction of not enforcing a federal law because of the misstatements of an employee of another sovereign makes no contribution to better knowledge and articulation of federal requirements. Finally, and not unimportantly, accepting appellant's position would go far to eviscerate the specific purpose of the federal firearms statutes, enacted because "State gun control laws were found 'inadequate to bar possession of firearms from those most likely to use them for unlawful purposes' and Congress sought to buttress the States' efforts." *Scarborough v. United States,* 431 U.S. 563, 575 n. 11, 97 S.Ct. 1963, 1969 n. 11, 52 L.Ed.2d 582 (1977) (quoting 114 Cong. Rec. 14774 (1968)).

We therefore affirm the district court's ruling rejecting appellant's theory of defense, both in its broad Due Process and in its traditional "entrapment by estoppel" formulations. Appellant in his brief has alluded to an offer to prove entrapment in the narrowest sense by showing that federal authorities deliberately targeted FID recipients for federal prosecution. We have no record reference of such an offer and have noted the only offer of proof cited to us by either party.

■ *Defective search warrant.* Appellant moved to suppress the results of the December 1 search on the ground that the underlying affidavit of an ATF agent omitted two exculpatory statements. The first was that agent Moniz had told appellant in a conversation on September 28 that federal law did not permit him to possess conventional firearms. The thrust of appellant's argument on this point was that appellant would naturally have disposed of any such firearms, so that by December 1 there would have been no reason to suspect that they were still on the premises. The second omitted statement was that certain equipment used to check sights on conventional weapons was observed on September 28 and again on November 19, when the officers visited Caron's residence. The argument here is that firearms could have been removed, with ancillary equipment left behind.

The court denied the motion, finding that the affidavit was accurate, that nothing had been knowingly withheld, and that no further hearing was necessary. This surely was correct. Wholly apart from the marginality of the omitted facts, there was not even an allegation, not to mention support, of any reckless or intentional act of exclusion, which fact alone would preclude a *Franks* hearing. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978).

■ *Restoration of Rights.* Appellant contends that he should not have been sentenced under the Armed Career Criminal Act (ACCA)[4] because three of his five predi-

---

4. The ACCA requires a mandatory minimum sentence of 15 years' incarceration if one found guilty of a firearms crime has previously been convicted of three or more violent crimes or narcotics offenses. *18 U.S.C.* § *924(e)(1).*

cate convictions were in Massachusetts, and, under various Massachusetts statutes, his basic civil rights were either never revoked or were automatically restored after a lapse of time or expiration of the sentence.

The applicable federal statute is 18 U.S.C. § 921(a)(20), which excludes as a predicate crime "[a]ny conviction which has been expunged, or set aside or for which a person has had civil rights restored." Both sides recognize as the principal authority in this circuit *United States v. Ramos*, 961 F.2d 1003 (1st Cir.1992). In that case defendant's predicate offenses had been misdemeanors, involving no loss of civil rights. Although we held that, such rights not having been lost, they could not be "restored," we also declared that restoration required individualized, affirmative action signifying that the state has placed renewed trust in the ex-felon. *Id.* at 1008–09. We found persuasive the argument that § 921(a)(20) was significantly intended to overrule a case in which a specific gubernatorial pardon was ignored by a federal court in denying a dealer's license. We considered three adverse circuit authorities, including the leading case of *United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990), but did not accept their analysis. *Id.* at 1010. And we were not persuaded by the powerful dissent of one of our brethren.

Barring intervening controlling authority or other convincing reason to believe the earlier panel would change course, we are bound by a prior panel decision closely on point. *E.g., Irving v. United States*, 49 F.3d 830, 833–34 (1st Cir.1995). There have been additional decisions since *Ramos* that have allowed for the restoration of rights by operation of a generalized law, but none that have added any reasoning beyond that the *Ramos* panel found unpersuasive. *See United States v. Hall*, 20 F.3d 1066 (10th Cir.1994); *United States v. Thomas*, 991 F.2d 206 (5th Cir. 1993). Thus, even though the factual situation in *Ramos* involved misdemeanors and no deprivation of civil rights, we feel bound by the thorough and deliberate reasoning of that opinion. Applying that rationale, we hold

that the restoration of civil rights by the passage of time, by the expiration of a sentence, or even by the issuance of a license pursuant to a law of general application, does not qualify as the focused, individualized, affirmative action required by § 921(a)(20). We therefore conclude that appellant's three Massachusetts crimes must be counted as predicate ACCA offenses.

■ *Enhancement of Criminal History Category.* Appellant challenges a sentencing guideline, U.S.S.G. § 4B1.4, which provides for an enhanced criminal history category for an armed career criminal convicted of the use or possession of a firearm. The claim is that, by increasing a defendant's criminal history because of a characteristic of the current offense, a defendant who already is in an elevated criminal history category will not receive any further enhancement while a person with a lesser record will be catapulted upward.

Appellant, with no supportive citations, claims that this not only violates the objectives of the guidelines but also due process and equal protection. Such a claim can always be made when the limits of punishment ranges are approached. A defendant with a meager criminal record, or having been found in possession of a small quantity of contraband, may always complain that defendants with lengthier records or possession of greater quantities of contraband have received more favorable treatment where maximum penalties have been established. Fixed ceilings necessarily involve increasing diminution of enhancement as one approaches the ceiling, and, by the same token, increasing disparity among those subject to the ceiling. But, while the guidelines do not provide open-ended categories, they do allow a district court in a proper case to depart upward if a criminal history category proves inadequate. U.S.S.G. § 4A1.3.

We see no error in calculating appellant's criminal history category, constitutional or otherwise.

AFFIRMED.

ORDER OF COURT

Upon consideration of appellant's petition for rehearing en banc,

It is ordered that the petition for rehearing en banc be granted limited to the following issues:

May a felony conviction, either in the absence of state deprivation of the rights of the convicted felon or after restoration of some or all of those rights by operation of state law, without any individualized determination, be counted for purposes of the Armed Career Criminal Act, 18 U.S.C.A. § 921(a)(20) (which provides in substance that felonies for which the felon's civil rights have been restored are not to be considered in determining eligibility for sentence enhancement), or similarly worded statutes?

The appellant is to file a supplemental brief not to exceed twenty five pages within twenty days from the date of this order. The appellee shall file a response within twenty days from the receipt of appellant's supplemental brief not to exceed twenty five pages. The appellant may file a reply within ten days of receipt of appellee's brief, not to exceed five pages.

As to all other issues, the en banc panel declines review and the panel by separate order declines a rehearing. The panel opinion remains in effect as to these issues.

For the time being the judgment will remain in effect but mandate will not issue.