APPEALS COURT 
 
 COMMONWEALTH vs. JUSTIN PAGE

 
 Docket:
 24-P-298
 
 
 Dates:
 February 5, 2025 – May 13, 2025
 
 
 Present:
 Blake, C.J., Meade, & Englander, JJ.
 
 
 County:
 Franklin
 

 
 Keywords:
 Motor Vehicle, Firearms. Firearms. Evidence, Firearm. Narcotic Drugs. Controlled Substances. Search and Seizure, Motor vehicle. Practice, Criminal, Appeal, Motion to suppress, Plea. Rules of Criminal Procedure
 
 

             Indictments found and returned in the Superior Court Department on April 1, 2022. 
            A pretrial motion to suppress evidence was heard by Mark D. Mason, J., and conditional pleas of guilty were accepted by Karen Goodwin, J. 
            Edward Crane for the defendant.
            Bethany C. Lynch, Assistant District Attorney, for the Commonwealth.
            MEADE, J.  Following his indictments on several firearm and drug-related charges, the defendant moved to suppress, in relevant part, items seized by the Greenfield police from a backpack located in his car, claiming that the warrantless search of the backpack violated art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution.  After an evidentiary hearing, the defendant's motion to suppress was denied on the basis that the warrantless search of the backpack was constitutional pursuant to the community caretaking exception.
            Thereafter, the defendant entered into a conditional plea agreement, pursuant to Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), pleading guilty to count one, unlawful possession of a firearm as a prior offender, and count five, possession of a class A controlled substance (heroin) with intent to distribute, while reserving the right to appeal from the denial of his motion to suppress.  We affirm the denial of the motion to suppress.
            Background.  "We recite the facts as found by the motion judge . . . ."  Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 81 (2020).  Greenfield Police Department Deputy Chief William Gordon (Deputy Chief Gordon) has been a member of the Greenfield Police Department since 1993.  His duties are largely administrative, and he last performed field work in 2008.  On September 24, 2021, at approximately 5:30 P.M., Deputy Chief Gordon was at a Big Y Supermarket parking lot with his wife, Greenfield Police Department Officer Laura Gordon (Officer Gordon).  Officer Gordon has been with the Greenfield Police Department for approximately thirty years.  Both Deputy Chief Gordon and Officer Gordon were off duty, going grocery shopping, and in plain clothes.  They were traveling in an unmarked Greenfield police car equipped with a police radio.  While pulling into the Big Y Supermarket parking lot, they heard a police broadcast that there was a person "down or semi-conscious" in a car in that parking lot, near the New Fortune Restaurant.  There they saw a group of people standing next to the driver's side door of a car and drove up to the gathering.  Inside, a person, later identified as the defendant, appeared to be passed out and slumped behind the steering wheel.  The defendant was alone in the car.
            Deputy Chief Gordon notified the police department dispatch that they were at the scene with the person.  Officer Gordon got out of their car and approached the defendant's car; the defendant was pale white as if he was not breathing.  Officer Gordon told Deputy Chief Gordon she believed the defendant was overdosing.  Deputy Chief Gordon radioed to dispatch that the defendant was "nodding" and having difficulty breathing.  Officer Gordon opened the driver's side car door, and Deputy Chief Gordon saw that the defendant appeared to be struggling with Officer Gordon.
            Deputy Chief Gordon got out of his car to assist.  A small group of people remained at the scene.  Officer Brent Griffin (Officer Griffin) arrived in uniform, and Deputy Chief Gordon stepped aside to permit Officer Griffin to assist.[1]  The officers told the defendant that they were there to help him.  The defendant was reaching for the steering wheel and Deputy Chief Gordon thought he might attempt to drive away.  At the same time, the defendant was reaching for a backpack next to him.  The officers repeatedly told the defendant to stop reaching for the backpack.  The defendant ignored their orders, pulled away from Officers Gordon and Griffin, and continued to reach for the backpack and the car's controls.
            Because the defendant was reaching for the steering wheel and the backpack, Deputy Chief Gordon believed there was a safety issue, and he attempted to open the front passenger's side door, but it was locked.  The crowd in the parking lot was growing in number, and Deputy Chief Gordon's car had its blue lights activated.  Officer Gordon unlocked the passenger's side door, and Deputy Chief Gordon retrieved the backpack from the car.  At that point, he was not aware of any criminal wrongdoing and continued to believe the defendant was overdosing.  Deputy Chief Gordon retrieved the backpack because medics had arrived on scene and he assumed it would travel with the defendant to the hospital.[2]
            Deputy Chief Gordon opened the backpack for two purposes:  first, to determine if it contained a weapon to ensure the safety of the public, the police, and the defendant; and second, to determine if it contained the defendant's identification.  Inside the backpack, Deputy Chief Gordon found several small bags containing hard objects that he believed to be packets of heroin.  At the bottom of the backpack, he found a knife, a pistol, and a large amount of cash.  Once he discovered the weapons, Deputy Chief Gordon assumed the defendant had been reaching for the backpack to get a weapon.  Accordingly, he instructed Officer Griffin to get the defendant out of the car and handcuff him.
            Two additional officers arrived on scene, and they transported the defendant to the Greenfield Police Department for booking.  At the police station, the defendant was twice provided his Miranda rights.[3]  Thereafter, he admitted to possession of the narcotics and to having taken the firearm from his mother.[4]
            Discussion.  1.  The conditional plea agreement.  The defendant claims, for the first time on appeal, that we "should follow the bread crumbs laid out by the [United States] Supreme Court [in Caniglia v. Strom, 593 U.S. 194 (2021),] and rule that, under the Fourth Amendment, there is no community caretaking exception [for warrantless searches] that operates distinctly from the emergency aid exception."  As a threshold matter, the Commonwealth contends that the defendant's constitutional challenge to the community caretaking exception exceeds the scope of the appellate claim that the defendant reserved in the conditional plea agreement, which had been executed pursuant to Mass. R. Crim. P. 12 (b) (6).  Because of that, the Commonwealth claims that the argument is waived.[5]  In the circumstances of this case, we disagree.
            The Supreme Judicial Court first allowed the use of conditional plea agreements in Commonwealth v. Gomez, 480 Mass. 240, 240-241, 252 (2018), which prompted the addition of rule 12 (b) (6) to the Massachusetts Rules of Criminal Procedure in 2019, see Gomez, supra at 252.  In relevant part, rule 12 (b) (6) states,
"With the written agreement of the prosecutor, the defendant may tender a plea of guilty . . . while reserving the right to appeal any ruling or rulings that would, if reversed, render the Commonwealth's case not viable on one or more charges.  The written agreement must specify the ruling or rulings that may be appealed, and must state that reversal of the ruling or rulings would render the Commonwealth's case not viable on one or more specified charges."
Mass. R. Crim. P. 12 (b) (6).  In this case, the defendant's written conditional plea agreement reserved the following issue:  "Defendant's Motion to Suppress held on February 7, 2023[,] and denied by [the motion judge] on February 10, 2023.  Related to all charges on the indictment."
            At issue in this appeal is, after reserving the right to appeal from an order denying a motion to suppress, what arguments may the defendant raise on appeal regarding that ruling.  The Commonwealth contends that the defendant's reservation of the right to appeal from the denial of his motion to suppress is implicitly limited to the assertion of arguments raised in the motion, which in this case did not include a constitutional challenge to the community caretaking exception.[6]
            In light of the recency of the addition of rule 12 (b) (6), the Commonwealth supports its position with cases applying Fed. R. Crim. P. 11(a)(2), the Federal analogue to rule 12 (b) (6).[7]  We may look to such cases for guidance.[8]  See, e.g., Commonwealth v. Lampron, 441 Mass. 265, 269 (2004) ("it is appropriate to look to the Federal analogue of [Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979)], on which our rule was modeled, for interpretive guidance").
            As a general principle, the Commonwealth is correct:  when a defendant reserves the right to appeal from a pretrial ruling in a conditional plea agreement, the scope of reserved arguments on appeal will ordinarily be limited to those raised below in the applicable motion and motion hearing.  See United States v. Doherty, 17 F.3d 1056, 1058 (7th Cir. 1994) ("[The defendant]'s 'conditional' plea . . . reserved the right to appeal only the denial of his motion to dismiss the indictment on the ground the motion had stated . . .").  See also United States v. Anderson, 374 F.3d 955, 958 (10th Cir. 2004) (adopting rule set forth in Doherty, supra).
            However, where, as here, the motion judge's order relied on a legal doctrine that was not raised by the parties in connection with the motion to suppress, the scope of reserved arguments on appeal may include legal challenges to that doctrine and its application to the facts.  See Anderson, 374 F.3d at 958 (improper pat-down argument waived because "[n]either the order nor [the defendant]'s motion to suppress evidence raised the improper-patdown argument" [emphasis added]); United States v. Ramos, 961 F.2d 1003, 1006 (1st Cir.), cert. denied, 506 U.S. 934 (1992), overruled en banc on other grounds by United States v. Caron, 77 F.3d 1 (1st Cir. 1996) (entrapment by estoppel argument waived because "[n]either th[e] motions nor the district court's Rulings and Memorandum of Decision nor the written plea agreement itself say anything about entrapment by estoppel" [emphasis added]).
            We conclude, in the peculiar posture of this case, that the defendant's constitutional challenge to the community caretaking exception falls within the scope of the conditional plea agreement.  Although this challenge was not made in the motion to suppress, it was the basis of the judge's ruling.  As such, it comports with the policy objective underpinning the requirement that conditional plea agreements specify the ruling or rulings that may be appealed:  to "prevent entry of a conditional plea 'without the considered acquiescence of the government.'"  United States v. Yasak, 884 F.2d 996, 999 (7th Cir. 1989), quoting Advisory Committee Notes to Fed. R. Crim. P. 11 (1983).  See United States v. Carrasco, 786 F.2d 1452, 1454 n.3 (9th Cir. 1986), overruled en banc on other grounds by United States v. Jacobo Castillo, 496 F.3d 947 (9th Cir. 2007) ("Rule 11[a][2] represents . . . an insistence on unequivocal government acquiescence").  At the time the Commonwealth consented to the conditional plea agreement, it had notice of the motion judge's legal bases for the reserved ruling, including the invocation of a legal doctrine not raised by the parties.
            A further supporting justification that makes it permissible for us to address the defendant's claim in this posture is that it presents a pure question of law.  The constitutional challenge here does not require the resolution of any issues of fact that we would have otherwise treated as waived if they had not been raised at the motion to suppress hearing.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 438 (2015) (improper for appellate court to engage in independent fact finding); Commonwealth v. Lugo, 104 Mass. App. Ct. 309, 314 (2024) ("[o]ur appellate office does not equip us" to find facts or weigh evidence).
            2.  The community caretaking exception.  The community caretaking exception to the warrant requirement finds its roots in Cady v. Dombrowski, 413 U.S. 433, 441 (1973).  There, the United States Supreme Court "held that a warrantless search of an impounded vehicle for an unsecured firearm did not violate the Fourth Amendment."  Caniglia, 593 U.S. at 196, citing Cady, supra.  The Court remarked that "police officers who patrol the 'public highways' are often called to discharge noncriminal 'community caretaking functions.'"  Caniglia, supra, quoting Cady, supra.
"The community caretaking doctrine is applicable principally to a range of police activities involving motor vehicles, in which there are objective facts indicating that a person may be in need of medical assistance or some other circumstance exists apart from the investigation of criminal activity that supports police intervention to protect an individual or the public" (citations omitted).
Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 51 (2014).
            We turn to the merits of the defendant's argument.[9]  The defendant claims that the community caretaking exception no longer exists under the Fourth Amendment in the aftermath of the Supreme Court's decision in Caniglia, 593 U.S. at 199.  However, the defendant's attempted reassembly of the Caniglia breadcrumbs fails to create the constitutional loaf he envisioned the Court baking.  Indeed, the Court framed its holding narrowly and established merely that the community caretaking exception does not extend to searches of a person's home.  Id. at 196-199.  Contrary to the defendant's suggestion, the Court did not eliminate in whole the community caretaking exception to the Fourth Amendment's warrant requirement, as it still applies to motor vehicles.  See Commonwealth v. Regan, 104 Mass. App. Ct. 623, 624-626 (2024).
            Alternatively, the defendant claims that Caniglia suggests that the community caretaking exception, if it exists at all, should be applied to a narrow set of circumstances.  Specifically, the defendant contends that Cady only explicitly applies to inventory searches of impounded vehicles and gives no indication that the police may conduct a warrantless search of anything within a vehicle whenever they believe that the safety of the public is in jeopardy.  Therefore, the defendant's argument follows, the community caretaking exception does not extend, as a matter of law, to the warrantless search of a person's backpack.  We disagree.
            The Supreme Judicial Court has not interpreted the scope of the exception to be so limited:
"In carrying out [the community caretaking] function, an officer may, when the need arises, stop individuals and inquire about their well-being, even if there are no grounds to suspect that criminal activity is afoot.  An officer may take steps that are reasonable and consistent with the purpose of his inquiry, even if those steps include actions that might otherwise be constitutionally intrusive" (emphasis added; citations omitted).
Commonwealth v. Knowles, 451 Mass. 91, 94-95 (2008).  See Commonwealth v. Demos D., 105 Mass. App. Ct. 193, 196 (2025).
            Here, the off-duty police officers responded to the unresponsive defendant in a car surrounded by a growing number of bystanders in a public parking lot.  The defendant was nodding, and appeared pale white, as if he was not breathing.  The officers believed the defendant was overdosing.  When his car door was opened, the defendant regained some level of consciousness, struggled with the officers, became combative, and grabbed for the steering wheel in what might have been an attempt to drive away.  At the same time, despite being repeatedly told not to, the defendant reached for the backpack next to him.
            Based on what was occurring, Deputy Chief Gordon took and opened the backpack to determine if it contained a weapon to ensure the safety of the nearby public and the police, and to determine if it held the defendant's identification.  As the motion judge found, Deputy Chief Gordon's actions in opening and searching the backpack were necessary to address the ongoing medical and safety concerns.  Indeed, an officer may take reasonable steps consistent with the purpose of his inquiry even if those steps may be constitutionally intrusive, e.g., searching for a weapon.  See Knowles, 451 Mass. at 95.  In any event, "[s]o long as the officer's conduct at the outset and throughout the course of exercising a community caretaking function is justified by the doctrine, the law does not attach significance to the officer's subjective motives."  Fisher, 86 Mass. App. Ct. at 51.  At the same time, while an officer performs a community caretaking function, he need not ignore contraband discovered in the process.  See Commonwealth v. Swartz, 454 Mass. 330, 335 (2009); Commonwealth v. Murdough, 428 Mass. 760, 764-765 (1999).
            Here, the Commonwealth met its burden of "demonstrating, by objective evidence, that the officer's actions were 'divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'"  Knowles, 451 Mass. at 95, quoting Cady, 413 U.S. at 441.  The motion to suppress was properly denied.
Order denying motion to suppress affirmed.
            1 The Greenfield Police Department's policy on off-duty officers provides that an off-duty officer who observes a crime being committed or a medical emergency should attempt to intervene.  Once an on-duty officer arrives on scene, the off-duty officer is expected to yield to the on-duty officer.
            2 When the incident call first came in, the Greenfield Fire Department was called for medical assistance.  Officer Griffin eventually determined there was no medical emergency and the Greenfield Fire Department medical team left.  The medics did not ask the police to look for any information relating to the defendant.
            3 See Miranda v. Arizona, 384 U.S. 436, 471-473 (1966).
            4 Although the defendant moved to suppress these statements, the motion judge did not address them, and the defendant does not challenge them on appeal.
            5 In general, "a plea of guilty by its terms waives all nonjurisdictional defects."  Commonwealth v. Cabrera, 449 Mass. 825, 830-831 (2007), citing Garvin v. Commonwealth, 351 Mass. 661, 663-664, appeal dismissed, cert. denied, 389 U.S. 13 (1967).  See United States v. Broce, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence").
            6 The defendant concedes in his reply brief that he did not make this argument in his motion to suppress.
            7 In relevant part, Fed. R. Crim. P. 11(a)(2) states, "With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."
            8 While the Reporter's Notes to rule 12 (b) (6) do not state that Federal rule 11(a)(2) served as its model, the relevant text of each rule is substantively identical:  both require that the conditional plea agreement specify the pretrial ruling or rulings being reserved for appeal, and neither provides further detail regarding the scope of appellate arguments that may be raised.  See Mass. R. Crim. P. 12 (b) (6); Fed. R. Crim. P. 11(a)(2).
            9 Because the motion judge based his ruling on the community caretaking exception, and we disagree with the defendant's arguments regarding that exception, we do not address the applicability of the emergency aid exception as an alternative justification for Deputy Chief Gordon's warrantless search.